ORIGINAL

1  WILLIAM A. SOKOL, Bar No. 072740
   BRUCE A. HARLAND, Bar No. 230477
2  WEINBERG, ROGER & ROSENFELD
   A Professional Corporation
3  1001 Marina Village Parkway, Suite 200
   Alameda, California 94501-1091
4  Telephone 510.337.1001
   Fax 510.337.1023
5
6  Attorneys for Petitioner
   SEIU, Local 2028
7
8
9                UNITED STATES DISTRICT COURT
10               SOUTHERN DISTRICT OF CALIFORNIA
11
   SEIU, LOCAL 2028                    ) No. '08 CV 4 8 6    L  POR
12                                     )
              Petitioner,             )  **PETITION TO COMPEL**
13                                     )  **ARBITRATION**
        v.                            )
14                                     )
   RADY CHILDREN'S HOSPITAL – SAN     )
15 DIEGO; DOES 1 THROUGH 10,          )
                                      )
16            Respondent.             )
                                      )
17                                     )
                                      )
18
19
20
21
22
23
24
25
26
27
28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

PETITION TO COMPEL ARBITRATION

**FILED**

MAR 1 4 2008

CLERK ... ... COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1   The Petition of Petitioner respectfully shows:

2       1.    Jurisdiction of this Court is based upon 29 U.S.C. § 185; 9 U.S.C. § 4; and 28

3   U.S.C. § 1337.  This is a Petition to Compel arbitration of a labor dispute arising under a

4   collective bargaining agreement.

5       2.    Petitioner is a labor organization within the meaning of 29 U.S.C. § 152.  It does

6   business within this jurisdictional district.  It is a labor organization, organized for the purpose of

7   representing its members in their terms and conditions of employment.

8       3.    Respondent is a California Non-Profit Corporation, doing business in this judicial

9   district.  It is engaged in an industry affecting interstate commerce within the meaning of 29

10  U.S.C. § 185 and 9 U.S.C. § 1.

11      4.    At all times relevant herein, Petitioner and Respondent have been parties to a

12  written collective bargaining agreement, a copy of which is attached as Exhibit "A" hereto and

13  incorporated herein by reference.

14      5.    Since on or about November 16, 2007, Petitioner filed a grievance, alleging a

15  violation of Articles I, IV, V, XVIII, and XXXI of the collective bargaining agreement when it

16  failed and refused to honor the recognition clause, denied access to Union representatives, denied

17  employees the right to be represented by the Petitioner, and threatened stewards and employees

18  who exercised their contractual and Union rights.  The issue presented by the grievance is

19  whether the Employer, Respondent, violated the Agreement by failing failing and refusing to

20  honor the recognition clause, denying access to Union representatives, denying employees the

21  right to be represented by the Union, and threatening stewards and employees who were

22  exercising their contractual and Union rights; if so, what is the appropriate remedy?  A copy of

23  said grievance is attached hereto as Exhibit  "B" and incorporated herein by reference.

24      6.    ARTICLE VI (GRIEVANCE AND ARBITRATION PROCEDURE) of the

25  collective bargaining agreement contains an arbitration procedure wherein the parties are bound

26  to submit grievances to final and binding arbitration.

27      7.    Since on or about January 8, 2008, and continuing to date, Petitioner has been

28  willing and has sought to refer to arbitration the dispute referred to above.  A copy of said Notice

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 2 -

1  of Arbitration Appeal is attached hereto as Exhibit "C" and incorporated herein by reference.

2  Respondent has refused and continues to refuse to submit this dispute to arbitration. A copy of a

3  letter dated February 11, 2008 from Gary F. Overstreet, on behalf of Respondent, refusing to

4  arbitrate the instant dispute is attached hereto as Exhibit "D" and incorporated herein by

5  reference. A copy of a letter dated March 10, 2008 from Gary F. Overstreet, on behalf of

6  Respondent, continuing to refusing to arbitrate the instant dispute is attached hereto as Exhibit

7  "E" and incorporated herein by reference.

8       WHEREFORE, Petitioner prays that this Court issue an Order requiring Respondent to

9  arbitrate said dispute. Petitioner further prays for attorneys' fees, costs and for such other and

10  further relief as to this Court seems just and proper.

11  Dated: March 11, 2008

12                 WEINBERG, ROGER & ROSENFELD
               A Professional Corporation

13

14                 By: _Bruce A. Harland_____

15                 WILLIAM A. SOKOL
               BRUCE A. HARLAND

16                 Attorneys for Petitioner
               SEIU, Local 2028

1/486729

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

- 3 -

PETITION TO COMPEL ARBITRATION

1

## EXHIBITS LIST

2

3 **EXHIBIT A**

4     Agreement Between Service Employees International Union
    Local 2028 and Rady Children's Hospital – San Diego ..................................................... 1-58

5 **EXHIBIT B**

6     Mike Wilzoch Memorandum Dated 11/16/07
    Re: Grievance - Failure to Honor Rights of Recognition................................................. 59-61

7 **EXHIBIT C**

8     Mike Wilzoch Memorandum Dated 01/08/08
    Re: Notice of Arbitration Appeal of Grievance on Failure

9     to Honor Rights of Recognition ............................................................................ 62

10 **EXHIBIT D**

11     Gary Overstreet Letter Dated 02/11/08 Re:  Class Action Grievance ................................. 63

12 **EXHIBIT E**

13     Gary Overstreet Letter Dated 03/10/08 Re: Children's Hospital -
    San Diego Class Action............................................................................................ 64

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

**EXHIBIT A**

AGREEMENT

BETWEEN

SERVICE EMPLOYEES INTERNATIONAL UNION,

LOCAL 2028

AND

RADY CHILDREN'S HOSPITAL - SAN DIEGO

April 19, 2007 through June 30, 2009

531793.1

# TABLE OF CONTENTS

Page

ARTICLE I RECOGNITION.................................................................................1
    Section 1.01. Bargaining Unit ...........................................................1
    Section 1.02. Exclusions....................................................................1
    Section 1.03. Resolution of Unit Scope Issues ..................................1
    Section 1.04. Supervisors ..................................................................1
    Section 1.05. Successor Union ..........................................................2

ARTICLE II EMPLOYMENT CATEGORIES .................................................2
    Section 2.01. Regular Full-Time Benefit Eligible .............................2
    Section 2.02. Regular Part-Time Benefit Eligible.............................2
    Section 2.03. Regular Part-Time Non-Benefit Eligible......................2
    Section 2.04. Per Diem ......................................................................2
    Section 2.05. Grant Funded / Contract ..............................................3
    Section 2.06. Casual ..........................................................................3
    Section 2.07. Reduction in Hours and/or Status ................................3
    Section 2.08. Benefit Eligibility ........................................................3

ARTICLE III UNION MEMBERSHIP ..............................................................3
    Section 3.01. Union Security and Dues/Fees Options........................3
    Section 3.02. Enforcement.................................................................4
    Section 3.03. Check-Off .....................................................................4

ARTICLE IV UNION REPRESENTATION .......................................................4
    Section 4.01. Field Representatives....................................................4
    Section 4.02. Union Stewards............................................................4
    Section 4.03. Representation at Investigatory Interview ....................5
    Section 4.04. Authorized Time Off for Union Business ....................5
    Section 4.05. Union Leave .................................................................5
    Section 4.06. Dispute Resolution Training.........................................5
    Section 4.07. New Hires (Union Orientation) ...................................6
    Section 4.08. Use of Employer Facility Conference Rooms..............6

ARTICLE V DISCIPLINE....................................................................................6
    Section 5.01. Basis for Discipline ......................................................6
    Section 5.02. Progressive Discipline ..................................................6
    Section 5.03. Investigatory Suspension..............................................6
    Section 5.04. Rebuttal........................................................................7

ARTICLE VI GRIEVANCE & ARBITRATION PROCEDURE.......................7
    Section 6.01. Purpose and Intent .......................................................7
    Section 6.02. Definition.....................................................................7
    Section 6.03. Informal Resolution.....................................................7
    Section 6.04. Formal Procedures.......................................................7

i                              EXHIBIT A
                                                                                                2

Section 6.05. Arbitration ...................................................................................................8
Section 6.06. Arbitrator's Authority and Decision.............................................................9
Section 6.07. Non-Arbitrability .........................................................................................9
Section 6.08. Arbitration Fees and Costs ..........................................................................9

ARTICLE VII PROBATIONARY PERIOD .............................................................................9
Section 7.01. Probationary Period and Extension ............................................................9

ARTICLE VIII EVALUATIONS ................................................................................................9
Section 8.01. Periodic Performance Evaluations..............................................................9

ARTICLE IX PHYSICAL EXAMINATIONS..........................................................................10
Section 9.01. Physical Examinations as Condition of Employment ...............................10

ARTICLE X SUBSTANCE ABUSE TESTING ......................................................................10
Section 10.01. Use of Substances and Testing ...............................................................10

ARTICLE XI SENIORITY ........................................................................................................10
Section 11.01. Definition.................................................................................................10
Section 11.02. Loss of Seniority......................................................................................10
Section 11.03. Lateral Transfers and Promotions............................................................11
Section 11.04. Vacation, Shifts, Scheduling and Holidays .............................................11
Section 11.05. Weekends..................................................................................................11

ARTICLE XII TRANSFERS ......................................................................................................11
Section 12.01. Involuntary Transfer Procedure...............................................................11

ARTICLE XIII REDUCTION IN FORCE .................................................................................12
Section 13.01. Layoff Defined ........................................................................................12
Section 13.02. Seniority for Layoff Purposes..................................................................12
Section 13.03. Notification...............................................................................................12
Section 13.04. Order of Layoff.........................................................................................12
Section 13.05. Displacement Rights.................................................................................12
Section 13.06. Recall from Layoff ..................................................................................13

ARTICLE XIV JOB VACANCIES .............................................................................................13
Section 14.01. Posting .....................................................................................................13
Section 14.02. Selection ..................................................................................................13
Section 14.03. Notification ..............................................................................................13
Section 14.04. Trial Period Following Change in Classification .....................................13

ARTICLE XV FLOATING..........................................................................................................14
Section 15.01. Floating Procedure....................................................................................14
Section 15.02. Probationary Employees ..........................................................................14

ARTICLE XVI CALL-OFFS AND DAILY CANCELLATIONS...............................................14
Section 16.01. Call-offs and Compensation ....................................................................14
Section 16.02. Call-offs and Time Worked .....................................................................14

Section 16.03. Order of Call-off.................................................................................15
Section 16.04. Call-off Notice....................................................................................15
Section 16.05. Called-off Employees Off the Schedule...............................................15
Section 16.06. Seniority Among Volunteers...............................................................15

ARTICLE XVII JOB DESCRIPTIONS AND JOB CLASSIFICATIONS .....................................15
Section 17.01. Job Descriptions ................................................................................15
Section 17.02. New or Substantially Changed Jobs ...................................................15

ARTICLE XVIII NON-DISCRIMINATION ...........................................................................16
Section 18.01. Union Activities..................................................................................16
Section 18.02. Other Protected Status .......................................................................16

ARTICLE XIX HEALTH AND SAFETY ...............................................................................16
Section 19.01. Compliance.........................................................................................16
Section 19.02. Reporting Health and Safety Hazards by Employees...........................16
Section 19.03. In-Service...........................................................................................16
Section 19.04. Hepatitis B Vaccine ...........................................................................16

ARTICLE XX HOURS OF WORK........................................................................................17
Section 20.01. Definitions..........................................................................................17
Section 20.02. No Guarantee......................................................................................17
Section 20.03. Work Schedules..................................................................................17
Section 20.04. Shift Trades........................................................................................17
Section 20.05. Meal Periods.......................................................................................17
Section 20.06. Rest Periods .......................................................................................18
Section 20.07. Reporting Pay ....................................................................................18
Section 20.08. Split Shifts .........................................................................................18
Section 20.09. Shift Rotation.....................................................................................18
Section 20.10. Days Off ............................................................................................18
Section 20.11. Assignment of Overtime/Additional Hours..........................................18
Section 20.12. Rest Between Shifts............................................................................19

ARTICLE XXI LEAVES OF ABSENCE.................................................................................19
Section 21.01. Family Leaves of Absence ..................................................................19

ARTICLE XXII BEREAVEMENT LEAVE .............................................................................19
Section 22.01. Eligibility............................................................................................19
Section 22.02. Procedure ...........................................................................................19

ARTICLE XXIII JURY DUTY AND WITNESS SERVICE.......................................................20
Section 23.01. Jury Duty ...........................................................................................20
Section 23.02. Court Appearances .............................................................................20

ARTICLE XXIV PAID LEAVE...........................................................................................20
Section 24.01. Eligibility and Accrual........................................................................20
Section 24.02. Utilization of Paid Leave ....................................................................20
Section 24.03. Cash Out ............................................................................................21

EXHIBIT A

4

Section 24.04. Conversion to Paid Leave Benefit ................................................................21

ARTICLE XXV SICK LEAVE ......................................................................................21
Section 25.01. Eligibility and Accrual.................................................................................21
Section 25.02. Utilization of Sick Leave .............................................................................21
Section 25.03. Coordination of Sick Leave With State Disability Insurance.......................21
Section 25.04. Coordination of Sick Leave With Workers' Compensation Benefits .......22
Section 25.05. Forfeiture of Sick Leave ..............................................................................22
Section 25.06. Conversion to Sick Leave Benefit................................................................22

ARTICLE XXVI EDUCATION ......................................................................................22
Section 26.01. Tuition Assistance Program.........................................................................22
Section 26.02. Meeting and Training Time Pay ..................................................................22
Section 26.03. Employer Sponsored Education ...................................................................23
Section 26.04. Certifications ...............................................................................................23

ARTICLE XXVII INSURANCE BENEFITS ..................................................................23
Section 27.01. Continuation of Plans ..................................................................................23
Section 27.02. Change of Carriers.......................................................................................23
Section 27.03. Employee Contributions ..............................................................................23
Section 27.04. Contribution Rate Credit .............................................................................24
Section 27.05. Health Insurance Benefits Liaison...............................................................24

ARTICLE XXVIII RETIREMENT ................................................................................24
Section 28.01. Continuation of Plans ..................................................................................24
Section 28.02. Eligibility.....................................................................................................25

ARTICLE XXIX WAGES ...............................................................................................25
Section 29.01. Wage Scales.................................................................................................25
Section 29.02. Overtime ......................................................................................................26
Section 29.03. Standby and Call-Back Pay ........................................................................27
Section 29.04. Shift Differential..........................................................................................27
Section 29.05. Holiday Premium..........................................................................................27
Section 29.06. Per Diem Compensation...............................................................................27
Section 29.07. Weekend Differential ...................................................................................28
Section 29.08. Relief in a Higher Classification .................................................................28
Section 29.09. Longevity Bonus...........................................................................................28
Section 29.10. Pay Days......................................................................................................28
Section 29.11. Evaluations ..................................................................................................29

ARTICLE XXX PAY CHECK ERRORS.........................................................................29
Section 30.01. Underpayment ..............................................................................................29
Section 30.02. Overpayment ................................................................................................29

ARTICLE XXXI RIGHTS OF MANAGEMENT.............................................................29
Section 31.01. Management Rights......................................................................................29

ARTICLE XXXII ECONOMIC ACTION.........................................................................30

Section 32.01. No Work Stoppages...................................................................30
Section 32.02. Discipline..................................................................................30
Section 32.03. Remedies for Breach ................................................................30
Section 32.04. No Lockouts .............................................................................30

ARTICLE XXXIII BULLETIN BOARDS.............................................................31
Section 33.01. Bulletin Boards for Union Use .................................................31

ARTICLE XXXIV LABOR MANAGEMENT COMMITTEE .................................31
Section 34.01. Labor Management Committee ..................................................31

ARTICLE XXXV SUBCONTRACTING .................................................................31
Section 35.01. Subcontracting of Bargaining Unit Work...................................31

ARTICLE XXXVI SUCCESSORSHIP.....................................................................32
Section 36.01. Sale, Transfer of Control or Closure .........................................32

ARTICLE XXXVII PAGERS.....................................................................................32
Section 37.01. Use of Pagers ............................................................................32

ARTICLE XXXVIII LIABILITY INSURANCE ........................................................32
Section 38.01. Liability Coverage ....................................................................32

ARTICLE XXXIX UNIFORMS................................................................................32
Section 39.01. Required Uniforms ...................................................................32

ARTICLE XL SAVINGS CLAUSE ..........................................................................33
Section 40.01. Severability...............................................................................33

ARTICLE XLI FULL NEGOTIATIONS, COMPLETE AGREEMENT AND WAIVER..........33
Section 41.01. Full Negotiations ......................................................................33
Section 41.02. Complete Agreement.................................................................33
Section 41.03. Waiver ......................................................................................33
Section 41.04. Policy Change...........................................................................33

ARTICLE XLII TERM OF AGREEMENT ................................................................34
Section 42.01. Duration and Termination of Agreement ...................................34

LETTER OF UNDERSTANDING.............................................................................36

LETTER OF UNDERSTANDING.............................................................................37

LETTER OF UNDERSTANDING:  COMMITTEE TO STUDY STEP SYSTEM ....................38

LETTER OF UNDERSTANDING:  STAFFING/PATIENT CARE ISSUES............................39

LETTER OF UNDERSTANDING.............................................................................40

LETTER OF UNDERSTANDING.............................................................................41

## AGREEMENT

## PREAMBLE

THIS AGREEMENT is made by and between Rady Children's Hospital – San Diego (hereinafter "the Hospital" or "the Employer") and Service Employees International Union, Local 2028 (hereinafter "the Union"). The Employer and the Union, and each of the officers thereto executing this Agreement, jointly and severally represent that they are duly authorized to execute this Agreement.

It is the mutual intent of the parties that the Employer, employees and Union representatives treat each other with dignity, respect, courtesy and trust, and that these principles shall also apply in all dealings with patients and visitors. It is further the intent of the parties that the provisions of this Agreement further these goals.

## ARTICLE I
## RECOGNITION

**Section 1.01. Bargaining Unit**:  Pursuant to the certification issued by the National Labor Relations Board in NLRB Case #21-RC-20707, Children's Hospital - San Diego (hereinafter "the Hospital" or "the Employer") recognizes Service Employees International Union, Local 2028, AFL-CIO (hereinafter "the Union") as the sole and exclusive collective bargaining representative of all the employees in the following bargaining unit:  All full-time and regular part-time and per diem service and maintenance (including skilled maintenance) employees, including those employees in the classifications listed in Schedule A (Wage Schedule), employed by the Employer at its facilities located in San Diego County, California.

**Section 1.02. Exclusions**:  Excluded from the aforesaid bargaining unit are all other employees, Communication Coordinator, Radiology Systems Coordinator, Recreation Therapist, Telemanagement Coordinator Per Diem, Telemanagement Coordinator, Community Relations Associate Per Diem, Autism Education Assoc I, Project Coordinator, Substitute Teacher Per Diem, Business Unit Coordinator, Teacher Assistant, Teacher, Graphic Designer, Graphic Designer Per Diem, Facilities Project Coordinator, EEG Tech, professional employees, technical employees, business office clerical employees, confidential employees, independent contractors, guards and supervisors as defined in the National Labor Relations Act, as amended.

**Section 1.03. Resolution of Unit Scope Issues**:  In the event that the parties are unable to resolve through mutual agreement any dispute concerning application of this Article to new classifications or locations of the Employer, such dispute may be submitted to the National Labor Relations Board.

**Section 1.04. Supervisors**:  The Employer shall not establish supervisory jobs or job titles for the purpose of eroding the bargaining unit or excluding employees from the bargaining unit.  Supervisors will not perform duties normally performed by employees falling within the scope of this Agreement except (i) in emergencies requiring immediate action or (ii) under circumstances that are beyond the control of the Employer or (iii) for training situations where

the performance of bargaining unit work may be required or (iv) to the extent that supervisors historically have been used by the Employer to perform work now within the bargaining unit.

**Section 1.05. Successor Union**:  The Employer agrees to recognize Service Employees International Union, United Healthcare Workers-West ("SEIU-UHW") as the successor to Service Employees International Union Local 2028 upon certification either by the National Labor Relations Board ("NLRB") or a neutral arbitrator mutually selected by the parties to conduct such election, that SEIU-UHW has established its majority status through a secret ballot election that complies with the requirements of the National Labor Relations Act.  Such election must include adequate notice to all bargaining unit employees and an opportunity for all bargaining unit employees to vote.  In the event that the election is conducted by the NLRB, majority status shall be proven if SEIU-UHW receives a majority of the valid ballots cast.  In the event that the election is conducted by a neutral arbitrator, majority status shall be proven if SEIU-UHW receives the votes of a majority of those eligible to vote.  If such election occurs during the term of this Agreement, recognition also shall be contingent upon SEIU Local 2028 disclaiming interest in the bargaining unit and SEIU-UHW agreeing to assume the terms of this Agreement.  Both SEIU Local 2028 and SEIU-UHW shall indemnify the Employer against any suits, claims, demands or other liabilities, including the Employer's reasonable attorneys' fees, that may arise by reason of the Employer's recognition of SEIU-UHW pursuant to this Article.

**ARTICLE II**
**EMPLOYMENT CATEGORIES**

**Section 2.01. Regular Full-Time Benefit Eligible**:  A regular full-time employee is defined as one who is normally scheduled to work  seventy-two hours (72) within a fourteen (14) day pay period.  These employees are benefits eligible.

**Section 2.02. Regular Part-Time Benefit Eligible**:  A regular part-time benefit eligible employee is defined as one who is normally scheduled to work at least forty (40) hours in a fourteen (14) day pay period or at least thirty-six (36) hours in such pay period if working twelve hour shifts, but less than a full-time schedule.  These employees are benefits eligible.

**Section 2.03. Regular Part-Time Non-Benefit Eligible**:  A regular part-time non-benefit eligible employee is defined as one who is normally scheduled to work less than a regular part-time benefit eligible employee.  Except where specifically stated otherwise in this Agreement such employees are not eligible for any Hospital paid benefits.

**Section 2.04. Per Diem**:  Per Diem employees are defined as those who are scheduled as needed to accommodate fluctuations in staffing requirements subject to the per diem employees' availability.  Included in this category are Per Diem Clerical Pool employees who are utilized to fill temporary staffing needs in clerical or support areas.  They are intended to float within the organization as needed and hours of work and compensation vary by assignment.  Except where specifically stated otherwise in this Agreement, per diem employees are not eligible for any Hospital paid benefits.  In the event that a Per Diem employee continues to work a regular schedule in the same classification, department and shift for a period in excess of one hundred and eighty (180) calendar days, excluding any time spent substituting for regular employees on authorized leaves of absence, the Employer shall post and fill the position being filled by the Per

2

Diem as a regular part-time or full-time position, pursuant to this Agreement, with the hours that were regularly assigned to the Per Diem employee.

**Section 2.05. Grant Funded / Contract**:   Grant funded and contract employees are defined as those who are employed by the Employer for a specific assignment with a fixed or renewable termination date pursuant to a grant or contract.   Such employees whose term of employment is greater than one hundred eighty (180) calendar days shall be considered members of the Bargaining Unit and covered by the terms of this Agreement.

**Section 2.06. Casual**:  Casual employees are defined as those who are hired for a limited duration arising out of special projects, abnormal workloads or emergencies, or to substitute for a regular employee who is on an authorized leave of absence. The specified period of employment for a casual employee shall not extend beyond one hundred eighty (180) calendar days, except that where a casual employee is hired to substitute for a regular employee on leave of absence, the period of casual employment may be extended until the end of the authorized leave of absence.   Casual employees shall not become regular employees without being selected for regular positions through the Employer's established recruitment and selection process.  Casual employees shall not be subject to the provisions of this Agreement.

**Section 2.07. Reduction in Hours and/or Status**:  The Employer will give reasonable consideration to employee requests to reduce hours and/or status.  Staffing and patient care needs will be considered when deciding whether to grant any such request.  Reduction in force exists when the Employer reduces hours for a regular full-time or regular part-time position (other than daily call-off).   Such reduction in hours will be subject to the provisions of Article XIII (Reduction in Force).

**Section 2.08. Benefit Eligibility**:  All positions that are posted as full-time, except those that are casual as defined in Section 2.06, are benefit-eligible positions.   Part-time positions, when posted, will state whether or not they are benefit eligible.

## ARTICLE III
## UNION MEMBERSHIP

**Section 3.01. Union Security and Dues/Fees Options**:  Effective the earlier of one hundred and eighty (180) days after the effective date of this Agreement, or thirty (30) days after recertification of the Union, it shall be a condition of employment that each Bargaining Unit employee either (a) become and remain a member of the Union and comply with the financial obligations required for membership or (b) pay a service fee to the Union for administration of this Agreement in an amount which conforms to applicable law and in no event exceeds the amount of dues uniformly required for membership or (c) in the event the Bargaining Unit employee is a member of an actual religious body or sect which has historically held conscientious objection to joining or financially supporting a union, pay an amount equal to union dues to a charitable fund of the employee's choice exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. After this provision takes effect, as described above, a newly hired employee shall have thirty (30) days from date of hire to comply.  An employee who chooses to make payments to a charitable fund may be required to verify to the Union that such payments have been made.

EXHIBIT A
9



**Section 3.02. Enforcement**:  The Union and not the Employer shall be responsible for enforcing the requirement that employees fulfill their dues or union fee obligations.  Among the Union's enforcement options is the filing of a civil suit against the delinquent employee. However, it is understood that the Union will make all reasonable efforts to correct the situation before the commencement of litigation.  The Employer shall not be required to discharge or otherwise discipline employees who fail or refuse to meet their financial obligations under this Article.

**Section 3.03.  Check-Off**:  Employees may voluntarily choose to remit dues or fees to the Union through payroll deduction check-off method by delivering to the Employer an executed written authorization which conforms with all legal requirements; provided that said monies shall be deducted only after all deductions required by law or otherwise authorized by the employee have previously been deducted. The Employer shall remit collected dues and fees to the Union no later than twenty (20) days following the date on which the deductions have been made.

## ARTICLE IV
## UNION REPRESENTATION

**Section 4.01. Field Representatives**:  A duly authorized field representative of the Union shall have access to the Employer's facilities in which Bargaining Unit employees work, for purposes related to the administration of this Agreement.  The field representative shall notify the Employer's Senior Managing Director of Human Resources or the Human Resources Business Partner responsible for the area in question of each visit prior to entering the facility. Such notification shall include the specific areas of the intended visit.  While at any of the Employer's facilities, the field representative shall wear his/her Union representative badge issued by the Employer.   Such Union representative shall not interfere with the work of employees or the confidentiality of patients, and shall comply with all regulations applicable to non-employees, including but not limited to security and infection control regulations.  Under no circumstances shall a Union representative have access to any patient care areas of the Employer's facilities without (i) obtaining prior approval from department leadership, which shall not be unreasonably denied, (ii) being escorted to his or her destination within the patient care area by a member of such leadership or designee and (iii) having signed the Hospital's most current version of a HIPAA compliance agreement regarding patient confidentiality.   If the Union representative wishes to meet with an employee, such meeting shall be held before or after the employee's shift or on non-work time such as the employee's lunch period or break.  This shall not be construed to preclude a Union field representative from meeting with an employee and his/her supervisor during the employee's work time in connection with a problem or complaint provided such meeting is pre-scheduled with the supervisor.  Meetings held on the Employer's premises with an Employer representative present shall be conducted on the clock if they occur during the employee's scheduled working time.  Meetings conducted outside an employee's scheduled working time and meetings having no Employer representative present shall be conducted off the clock unless the parties mutually agree otherwise.

**Section 4.02. Union Stewards**:  The Union shall provide the Employer with a written list of Union stewards after their designation, and shall notify the Employer of changes as they occur.  The Union may designate one steward as Chief Steward.  Prior to the Employer's receipt

EXHIBIT A
10

of such Union designation, the Employer is not obligated to recognize a Union steward under this Article. The functions of the Union steward include the authority (1) to settle or assist in settling problems arising in connection with the application or interpretation of the Agreement, (2) to resolve grievances at Step A or B of the grievance procedure, and (3) to serve as a Union representative for Weingarten meetings. If a meeting is mutually agreed to between the Employer and a Steward during the Steward's working time, for the purpose of administration of this Agreement, the time so spent by the Steward shall be compensated as working time. In all other circumstances, a Steward's release from work to conduct Union business shall be governed by Section 4.04.

**Section 4.03. Representation at Investigatory Interview:** When the Employer conducts an investigatory interview which the interviewed employee reasonably believes may result in his or her discipline, such employee may request to have a Union Steward present. Hospital supervision shall notify the employee at the time of scheduling the interview that it will be investigatory in nature and that the employee is entitled to make arrangements to have a Steward present. If the investigatory interview is scheduled to take place during scheduled working time of the Steward, the employee's right to be represented shall include release of the Steward in order to attend the interview, with pay for a reasonable period of time up to a maximum of one (1) hour. The one (1) hour period can be extended upon mutual agreement. If the investigatory interview is scheduled during a time period when no representative can be available because of patient care or other business requirements, the interview will be rescheduled. Such investigatory interview shall not be delayed by an employee's request for a specific Steward, so long as another Steward is available. The right to request the presence of a Steward as set forth in this Section does not apply to meetings to discuss performance evaluations. Such right does not apply to disciplinary meetings that occur after completion of the investigation, except in the case of a disciplinary meeting in which a final warning, suspension or termination is being issued and only in such case if a Steward is available within a reasonable period of time not to exceed thirty (30) minutes.

**Section 4.04. Authorized Time Off for Union Business:** The parties recognize the legitimate needs of the Employer and patients to have an employee's working time devoted to delivery of patient care and other business needs. Accordingly, the Employer may permit a Union Steward to be relieved from duty, consistent with the efficient delivery of patient care and other clinical or business needs, in order to conduct Union business. Time off under this Section 4.04 must be authorized in advance and shall be without pay (or benefits accrual if applicable). Except as specifically provided in this Article IV, Stewards shall not conduct Union business during their working time or the working time of the employee(s) with whom they are discussing Union business.

**Section 4.05. Union Leave:** Upon advance written request from the Union, received by the Employer prior to posting of the schedule in question, and subject to staffing and scheduling needs, the Employer shall grant up to two (2) days off without pay per calendar year to each Union Steward for the purpose of participating in Union educational programs.

**Section 4.06. Dispute Resolution Training:** The Employer shall provide time off with pay (including benefits accrual if applicable) to a maximum of four (4) stewards designated by the Union, for participation in conflict resolution training conducted by the Federal Mediation

and Conciliation Service. The Employer shall provide a total of ten (10) hours of paid time (including benefits accrual if applicable) per month for use by such stewards relating to grievance administration under Section 6.03 and/or Section 6.04 of this Agreement. The maximum amount of paid time (including benefits accrual if applicable) which the Employer shall be obligated to provide under this Section 4.06 for such purposes shall be ten (10) hours per month, which can be divided among the stewards who have completed conflict resolution training as deemed appropriate by the Union.

Section 4.07. New Hires (Union Orientation): The Employer shall provide to all new hires into a Bargaining Unit position written information from the Union. Such information shall include but is not limited to a copy of this Agreement, a list of Union Stewards and the telephone number and address of the Union's office. It shall not include any materials that the Union would be prohibited from posting pursuant to Article XXXIII of this Agreement. During new hire orientation for Bargaining Unit employees, the Employer will allow a representative of the Union up to fifteen (15) minutes to discuss with such newly hired Bargaining Unit employees the Union and the terms of this Agreement. During that time period the Union representative may also distribute to Bargaining Unit employees a union authorization/membership card. In the event that a Union Steward is designated by the Union for such purpose and the Steward is otherwise scheduled to work during the applicable time period, such Steward shall be released from work without loss of pay or benefits for the time necessary to make said presentation, provided that patient care permits.

Section 4.08. Use of Employer Facility Conference Rooms: The Employer shall provide reasonable access to an on-site conference room on a weekend or during a weekday between the hours of 5:00 p.m. and 5:00 a.m., based on availability but no more than one time per month, for use by the Union in meeting with employees covered by this Agreement. Requests to schedule such conference room shall be directed to the Senior Managing Director of Human Resources or his/her designee. The Employer reserves the right to cancel previously scheduled use of a conference room by the Union when unforeseen circumstances require it, such as the Employer's need for use of such room for patient care related purposes or staff conferences. In such circumstances the Employer will attempt to provide a comparable alternative at the Employer's facility.

## ARTICLE V
## DISCIPLINE

Section 5.01. Basis for Discipline: The Employer shall not discipline or discharge non-probationary Bargaining Unit employees without just cause.

Section 5.02. Progressive Discipline: Unless circumstances warrant more severe action, the Employer will utilize progressive disciplinary steps as follows: verbal counseling, written warning, final written warning (with or without unpaid disciplinary suspension). Progressive discipline will be administered in a consistent manner.

Section 5.03. Investigatory Suspension: No employee shall be kept on unpaid investigatory suspension for more than ten (10) calendar days. In the event that no disciplinary action results from such investigation or if disciplinary action taken against the employee is

determined to be unjustified through the grievance and arbitration process, the employee shall be made whole for the applicable amount of time lost on unpaid investigatory suspension.

**Section 5.04. Rebuttal**:  A Bargaining Unit employee shall have the right to rebut, in writing, any disciplinary notice placed in his or her personnel file, provided that such rebuttal is submitted to the Employer within seven (7) calendar days following receipt of the notice.  Such rebuttal shall be attached to the disciplinary notice and be placed in the personnel file. Submission of such rebuttal shall not be considered the filing of a written grievance pursuant to Article VI of this Agreement.  In any case where the Employer and the Union agree to revise personnel record materials, the Employer shall, upon request, provide evidence of such revision.

### ARTICLE VI
### GRIEVANCE & ARBITRATION PROCEDURE

**Section 6.01. Purpose and Intent**:  The purpose of these procedures is to provide the parties with an orderly means of resolving differences that may arise between them. The parties intend that these procedures shall be in lieu of any other formal procedure established by the Employer for resolution of employee grievances, subject to the provisions of Section 6.07 below, and shall be the exclusive means for resolution of Union grievances against the Employer. It is the intent that every reasonable effort will be made between the parties to resolve differences at the earliest possible step.

**Section 6.02. Definition**: Any complaint or dispute arising between a Bargaining Unit employee and/or the Union and the Employer concerning conduct by the Employer alleged to be in violation of an express provision of this Agreement shall be resolved by the filing of a grievance in accordance with this Article.  Only employees who have completed their probationary period under Article VII of this Agreement shall have the right to grieve whether or not a discharge or discipline was for just cause.

**Section 6.03. Informal Resolution**: All grievances except those involving discharge must be raised informally within ten (10) calendar days after the date the grieving party knew or should have known of the events giving rise to the grievance.  The informal grievance may be raised by oral notification of the grievance to the grieving party's immediate supervisor or to the Director responsible for the area in question. The individual to whom the informal grievance is presented shall provide an oral response within ten (10) calendar days of receipt of notification of the grievance.  If the grievance is not settled by the response or if there is no response, and the grieving party wishes to pursue the matter further, a written grievance must be filed with the Human Resources Department in accordance with Section 6.04 below.  An employee shall be entitled to the presence of a Union representative and/or Union Steward at any step of the formal procedures set forth below.

**Section 6.04. Formal Procedures**:  All written grievances except those involving discharge must be filed with the Human Resources Department within thirty (30) calendar days after the date the grieving party knew or should have known of the events giving rise to the grievance. All written grievances involving discharge must be filed with the Human Resources Department within ten (10) calendar days after the date of discharge. The written grievance shall include a statement of the facts or events giving rise to the grievance; the date upon which the

7

EXHIBIT A
13

event occurred; the provisions of the Agreement alleged to have been violated; and the remedy requested. If the written grievance is not filed or appealed within the specified time limits or in accordance with the procedural requirements set forth herein, the grievance shall be deemed to have been resolved and shall not be subject to any further proceedings. The time limits set forth in this Article may be extended or waived only by mutual agreement of the parties. Such extension or waiver must be confirmed in writing within the specified time limits.

**STEP A:**
Within ten (10) calendar days after the grievance is filed in writing by the aggrieved party with the Human Resources Department, the Union and the Employer shall meet and attempt to settle it. For the purpose of this Step A, the Employer's representative shall be the appropriate level of management above the grieving party's immediate supervisor. The non-grieving party shall respond in writing to the grievance within ten (10) calendar days of the Step A meeting. If the non-grieving party fails to respond in writing within ten (10) calendar days of the Step A meeting, the grievance shall be deemed to have been denied.

**STEP B:**
If the grievance is not settled in Step A, the Union may make a written appeal of the unresolved grievance ("Step B appeal") to the appropriate higher level of management by filing a Step B appeal with the Human Resources department. The Step B appeal must be filed not later than ten (10) calendar days after receipt of the non-grieving party's Step A response, or expiration of the response period if no response is timely made, whichever is sooner. Within ten (10) calendar days after the Step B appeal is filed in writing by the aggrieved party with the other party, the non-grieving party shall respond in writing to the appeal. If the non-grieving party fails to respond in writing within ten (10) calendar days of receipt of the Step B appeal, the appeal shall be deemed to have been denied.

**Section 6.05. Arbitration**: If a grievance is not satisfactorily resolved in Step B above, the Union may refer the grievance to arbitration by notifying the Human Resources Department of its intention to submit the grievance to arbitration. Such notification must be submitted to the Human Resources Department not later than thirty (30) calendar days after receipt of the Step B response, or expiration of the Step B response period if no response is timely made, whichever is sooner. If arbitration pursuant to Section 5.05 is not requested within the applicable time periods indicated above, the grievance shall be deemed to have been resolved and shall not be subject to any further proceedings. The Employer and the Union shall, within ten (10) working days of such notification, choose a mutually acceptable impartial arbitrator. If the parties are unable to agree to an arbitrator, the grieving party shall request either the American Arbitration Association (AAA) or the Federal Mediation and Conciliation Service (FMCS) to provide them with a list of seven (7) arbitrators who reside or have an office in Southern California, with a preference for arbitrators who are also experienced in issues involving the health care industry. In the event that the grieving party requests a list from AAA, the grieving party shall be responsible for any fee charged by AAA to provide such list. Either party shall have the option of requesting a second list before the commencement of the selection process, but such option must be exercised by (1) mailing a new request to the AAA or FMCS whichever is applicable,

8

and (2) notifying the other party in writing, both within fifteen (15) calendar days of the date shown on the first list.

**Section 6.06.** **Arbitrator's Authority and Decision**:    The Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express language of this Agreement. The Arbitrator shall not have the power to add to, subtract from, or modify in any way the express language of this Agreement.    The Arbitrator shall have no authority to and shall not add to or modify in any way the Employer's responsibilities or duties under this Agreement, nor may the Arbitrator impose upon the Employer an obligation, responsibility or duty which is not expressly required of the Employer by an express provision of this Agreement. The Arbitrator shall have no authority to award damages other than back-pay and benefits (make whole remedy) required by the Agreement, as reduced by all interim earnings and benefits received by the grievant. Any decision within the jurisdiction of the Arbitrator shall be final and binding on all concerned.

**Section 6.07.** **Non-Arbitrability**:  No grievance shall be submitted to arbitration under Section 6.05 unless the time limits set forth in this Article have been strictly complied with unless waived or extended by both parties in a signed writing. Any grievance submitted after the time limits have expired shall be deemed forfeited and waived by the aggrieved party.

**Section 6.08.** **Arbitration Fees and Costs**:  The fees and expenses of the arbitrator, the cost of the hearing room, and the cost of the court reporter, if required by the arbitrator, shall jointly be shared by the parties.  Each party will bear its own expenses of representation and presentation of its case, including witnesses, and including the cost of any transcript for the party's own use.

**ARTICLE VII**
**PROBATIONARY PERIOD**

**Section 7.01.** **Probationary Period and Extension**:    Each newly hired or rehired employee shall serve a probationary period of ninety (90) calendar days.  Such probationary period may be extended for an additional thirty (30) calendar days by mutual agreement of the Employer and the Union prior to the expiration of the initial ninety (90) day period.  Time on unpaid leave of absence during the probationary period does not count as qualifying service for the completion of the probationary period.  An employee serving his or her probationary period, including any extension of such period, shall not have recourse to the grievance procedure of this Agreement in the event of discipline or discharge.

**ARTICLE VIII**
**EVALUATIONS**

**Section 8.01.** **Periodic Performance Evaluations**:  The employee shall be given a copy of any periodic written formal performance evaluation.   The contents of a performance evaluation shall not be subject to the grievance procedure of this Agreement and shall not be used in disciplinary action.

EXHIBIT A
15

## ARTICLE IX
## PHYSICAL EXAMINATIONS

**Section 9.01. Physical Examinations as Condition of Employment**:  All physical examinations required of employees as a condition of employment, according to the practice of the Employer, shall be given without charge, and all costs incident to those examinations shall be borne by the Employer.  Pre-employment physical examinations shall include all laboratory and other clinical tests required by Title 22 of the California Code of Regulations, examination and review of medical history by a physician or nurse practitioner, and certification by the physician or nurse practitioner that the employee is physically able to perform the essential functions of the job.

## ARTICLE X
## SUBSTANCE ABUSE TESTING

**Section 10.01. Use of Substances and Testing**:  The Union and the Employer mutually recognize the importance of a safe, productive and drug-free environment at the Hospital and subscribe to the following work rules:  Possession, consumption, buying, selling, distributing or being under the influence of any illegal drugs or alcohol during working time, while on the Employer premises or while conducting work off-site, is strictly prohibited.  In order to enforce this policy, employees may be tested for substance abuse when reasonable suspicion of such abuse exists.  The Union may grieve any aspect of the actual administration of this policy which it believes to be inappropriate.  The Employer will communicate in advance, in writing, to employees the specific criteria and procedures to be used in testing for substance abuse.

## ARTICLE XI
## SENIORITY

**Section 11.01. Definition**:  Seniority is defined as the length of time an employee has been continuously employed by the Employer. Seniority shall be maintained during an authorized leave of absence without pay of up to two (2) years, or for the period of maternity leave or family leave, provided the employee returns to work immediately following the expiration of such leave of absence.  Per diem employees shall accrue one (1) month of seniority for every one hundred twenty (120) hours worked. Seniority as defined in this Article shall be relevant for purposes of lay-offs (reductions in force), promotions, lateral transfers, vacations, shifts, scheduling and holidays, but not for benefits.

**Section 11.02. Loss of Seniority**:  An employee shall lose seniority for any of the following reasons:

> Voluntary termination;
> Discharge of a non probationary employee for just cause;
> Discharge of a probationary employee;
> Layoff without recall pursuant to Article XIII (Reduction in Force)
> Failure to return to work immediately following the expiration of
> an authorized leave of absence of less than two (2) years;

EXHIBIT A
16

Failure to return to work within two (2) years of the commencement of a leave of absence without pay.

**Section 11.03. Lateral Transfers and Promotions**: In the case of a lateral transfer or promotion within the Bargaining Unit, the employee shall retain all of his/her seniority as defined in this Article XI.

**Section 11.04. Vacation, Shifts, Scheduling and Holidays**: Choice of vacation, shifts, scheduling and holidays worked shall be determined in accordance with the past practice within individual departments as long as seniority and rotation are recognized as the criteria, subject to staffing as required to ensure appropriate staff mix in terms of skill. Choice of major holiday off will be determined on a rotating basis in order of seniority. For purposes of this Section, a major holiday shall be defined as one of the following three time periods: (1) Thanksgiving Day; (2) Christmas Eve through and including Christmas Day; and (3) New Year's Eve through and including New Year's Day. A day shift employee shall be guaranteed at least one major holiday shift off per year, provided that adequate staff is available. An evening or night shift employee shall be guaranteed off at least two of the five shifts occurring within the three major holidays, provided that adequate staff is available. No employee with twenty-five (25) or more years of seniority shall be required to work any major holiday, provided that adequate staff is available and further provided that the exercise of this right does not deprive another employee of a guaranteed major holiday off. To provide the holiday time off pursuant to this Section, the Employer shall make every reasonable effort to ensure that adequate staff is available. Employees with twenty (20) or more years of seniority may be exempt from working these and other major holidays as defined by individual department past practice. Nothing in this Section shall be construed to require the Employer to hire additional staff, utilize agency staff or otherwise expend additional funds in order to provide a major holiday off.

**Section 11.05. Weekends**: Unless specifically hired to work weekends, employees will not be required to work more than two (2) weekends per four (4) week schedule.

**ARTICLE XII**
**TRANSFERS**

**Section 12.01. Involuntary Transfer Procedure**: No employee shall be involuntarily transferred to a different shift, department, job classification or facility arbitrarily and without prior notice to and consultation with such employee. Prior to implementing any involuntary transfer the Employer shall first solicit volunteers. Solicitation of volunteers shall not apply in cases of emergency, or when transferring an employee to a different shift for a short-term training period or for performance improvement purposes. It is not the Employer's intent that transferring an employee to a different shift for training or performance improvement purposes will result in transfer of another employee from that shift. However, if the transfer of another employee to a different shift in such circumstances is necessary to achieve coverage, the procedure set forth in Section 20.03 (Work Schedules) shall apply. A transfer for purposes of this Article XII shall refer to any change from the employee's regularly scheduled shift, department, job classification or facility. It shall not include movement between facilities for employees whose job requires that they work in more than one facility, nor shall it apply to

floating (Article XIV) or to employees who are hired for floating or rotating shift schedules (Article XX, Section 20.09).

## ARTICLE XIII
## REDUCTION IN FORCE

**Section 13.01. Layoff Defined**: A layoff is defined as an involuntary termination arising from a decision by the Employer to operate with fewer employees or positions or with different positions or to close programs, facilities or units in whole or in part.

**Section 13.02. Seniority for Layoff Purposes**: For purposes of layoff, Hospital seniority shall have the same definition as seniority in Article XI (Seniority). Classification seniority shall be defined as continuous service in the affected classification.

**Section 13.03. Notification**: The Employer shall notify the affected employees and the Union at least fourteen (14) calendar days in advance of any layoff of bargaining unit employees. At the Union's request, the parties shall meet to discuss the reasons for the layoff, the effects of the layoff and whether alternatives are feasible and desirable in the circumstances, such as use of attrition, job matching or retraining. The parties agree that employees faced with layoff shall first be offered an open position for which they are qualified, in lieu of involuntary layoff. A full-time or regular part-time employee shall, in addition to the other rights set forth in this Article, have the option, in lieu of layoff, to change to per diem status provided that per diem positions already exist in such employee's classification. A change to per diem status in these circumstances shall not affect the recall rights such an employee would have had pursuant to Section 13.06.

**Section 13.04. Order of Layoff**: A layoff of full-time and/or regular part-time employees in a bargaining unit classification shall be accomplished in inverse order of classification seniority in the affected department; that is, the employee with the least continuous service in such classification in the affected department shall be the first laid off, provided that qualifications and ability, all related to the job functions involved, are equal.

**Section 13.05. Displacement Rights**: A non-probationary full-time or regular part-time employee who, by operation of Section 13.04, is unable to remain in his or her position in the event of a layoff and is not offered an open position pursuant to Section 13.03, may exercise his or her Hospital seniority to displace the Bargaining Unit employee with the least Hospital seniority in the same classification or in a lower rated classification, provided that the employee seeking to move to such classification (i) has greater Hospital seniority, (ii) has previously occupied a position in such classification with the Employer, (iii) is currently qualified to perform the duties of such classification with only minimal orientation or minimal re-training and (iv) possesses, or obtains within a reasonable time not to exceed thirty (30) calendar days from notification of layoff pursuant to Section 13.03, all the certificates necessary to perform such duties. In such case, the employee that he or she displaces shall have the right of first consideration for an open position, as set forth in Section 13.03, but shall have no displacement rights as defined in this Section. In the event that the employee exercising displacement rights fails to obtain necessary certificates within fourteen (14) calendar days following notification of layoff, he or she may use accrued paid leave benefits or will be placed on unpaid leave for any

remaining portion of the time allotted under this Section. The displacement rights set forth in this Section shall not apply to grant-funded, contract or leased employees. The displacement rights set forth in this Section shall be waived unless they are exercised in writing to the Human Resources Department within five (5) calendar days following notification of layoff. An employee exercising such rights will be required to assume the same work schedule as the employee he or she displaces and must be available to commence work in the position as soon as it is vacated.

**Section 13.06. Recall from Layoff**:  Recalls from layoffs shall be accomplished in inverse order of layoff. A laid off employee shall retain, for a period of twelve (12) months, recall rights to his/her former classification, department, shift and location. Notice of recall shall be sent by certified mail, return receipt requested, to the employee's last known address. An employee shall forfeit recall rights if such employee fails to notify the Employer of acceptance of recall within fourteen (14) calendar days after notice of recall was sent or fails to return to work within fourteen (14) calendar days after acceptance of recall.

## ARTICLE XIV
## JOB VACANCIES

**Section 14.01. Posting**:  Notice of full-time and regular part-time job vacancies in Bargaining Unit positions shall be posted for a minimum of seven (7) calendar days before they are filled on a non-temporary basis. Qualifications for vacant positions shall appear on position postings. Postings also shall include position title, primary department, employment status (e.g. Full-Time, Part-Time, Per Diem, Casual), shift (e.g. days, evenings, nights or varying) and whether or not benefit-eligible.

**Section 14.02. Selection**:  Where experience, training, ability and qualifications of the applicants for the posted positions are determined by the Employer to be substantially equal, seniority, as defined in Article XI, Section 11.01 of this Agreement, shall be the primary consideration in making the assignment to the posted position. The Employer's determination as to the relative experience, training, ability and qualifications of applicants shall not be subject to the grievance procedure of this Agreement, but may, at the Union's request, be subject to discussion. With respect to vacancies on a different shift but in the same job classification, employee applicants who work in the same department and unit where the vacancy exists shall be given preference to fill such vacancy by seniority, with regular full-time and regular part-time benefit eligible employees having first preference, regular part-time non-benefit eligible employees next, per diem employees next and casual employees last.

**Section 14.03. Notification**:  Employees submitting a written application for a posted vacancy under this Article shall be informed by the Employer in writing whether or not they are awarded the position.

**Section 14.04. Trial Period Following Change in Classification**:  Employees who are promoted or transferred to another Bargaining Unit classification through the process described in this Article shall have orientation, as necessary, and such employees shall serve a thirty (30) calendar day trial period in the new classification. Employees will receive feedback during such period regarding performance, with a performance evaluation meeting at the end of the thirty

EXHIBIT A
19

(30) days.  If the Employer identifies deficiencies, the employee will be given a maximum fifteen (15) calendar day extension of the trial period to make the necessary improvements in performance.  An employee who, during his or her trial period in the new classification, does not demonstrate to the Employer's satisfaction the ability to perform the job, shall be entitled to return to the classification which he or she held prior to such change, provided that there are openings in the prior classification at the time.  Such return shall be to the previous wage rate without loss of seniority.  If there are no openings in the prior classification, the Employer will endeavor to place the employee in an available job for which such employee is qualified.  Thereafter, such employee shall be entitled to the first available opening in the classification which he or she occupied prior to the change in classification.  If none of these options is available, the employee will be laid off and will retain recall rights, in accordance with the provisions of Article XIII (Reduction in Force), for the next opening in the classification which he or she occupied prior to the change in classification.

## ARTICLE XV
## FLOATING

**Section 15.01. Floating Procedure**:  No Bargaining Unit employee who is regularly assigned to work in a particular department, unit or clinical area shall be required to float to any other department unit or clinical area unless the applicable duties and competencies are similar.  Floating of clinical personnel between clinical areas will comply with applicable legal requirements.  Before assuming a float assignment to a new area the employee shall receive orientation to that area sufficient to provide competent care or service.  Employees who are required to float shall float in the following order:

1. Volunteers to float
2. Casual
3. Per Diem
4. Full time and Part-Time by rotation in reverse order of seniority

**Section 15.02. Probationary Employees**:  An employee who is serving his or her probationary period under Article VII of this Agreement will not be required to float.

## ARTICLE XVI
## CALL-OFFS AND DAILY CANCELLATIONS

**Section 16.01. Call-offs and Compensation**:  Benefit-eligible employees who are called off may elect to take the time off without pay or utilize accrued paid leave benefits under Article XXIV.  Call-off shall not be considered an "occurrence" of absence for disciplinary purposes.

**Section 16.02. Call-offs and Time Worked**:  If accrued paid leave benefits are utilized for the hours called off, such hours shall be considered as regular hours for the purpose of benefit accruals.  The waiting periods for eligibility for health insurance and other fringe benefit plans shall not be affected by a call-off.

EXHIBIT A
20

**Section 16.03. Order of Call-off**: Where a call-off (rather than a layoff) occurs due to census fluctuations or other operational needs, such staff reduction shall be accomplished in the affected department, classification and shift by calling off individuals in the following order:

1.   Registry
2.   Employees receiving overtime
3.   Employees who volunteer for call-off
4.   Casual employees
5.   Per Diem employees by rotation in inverse order of seniority
6.   Regular Full-time employees and Part-time employees by rotation in inverse order of seniority.

A call-off seniority list shall be available in areas where call-off occurs.

**Section 16.04. Call-off Notice**: The Employer will make every reasonable effort to call off employees with at least two (2) hours notice prior to the commencement of their scheduled shift.

**Section 16.05. Called-off Employees Off the Schedule**: Once called off, an employee is considered off the schedule and shall not be required to maintain contact or be available to work, unless the employee has agreed to accept "On-Call" status and is compensated accordingly, for the shift or portion thereof.

**Section 16.06. Seniority Among Volunteers**:  If more employees than are necessary volunteer to be called off, seniority shall prevail.

## ARTICLE XVII
## JOB DESCRIPTIONS AND JOB CLASSIFICATIONS

**Section 17.01. Job Descriptions:** The Employer shall maintain job descriptions for all bargaining unit classifications, which will be provided to the Union. Upon request to the Senior Managing Director of Human Resources, or designee, the Employer shall provide to the Union or employee any existing job description and/or individual position description for a bargaining unit position. These shall be mailed or otherwise made available to the requesting party within five (5) calendar days of any such request.

**Section 17.02. New or Substantially Changed Jobs**: It is recognized that changes of job titles and duties contained in this Agreement may be necessary. In the event that the Employer intends to change job titles or substantially change job duties, it will send the Union a draft of the changes in advance of implementation. Within seven (7) calendar days following receipt of such draft, the Union may request a meeting with the Senior Managing Director of Human Resources or designee to discuss the proposed change and, if the duties are substantially changed, to meet and confer regarding the wage range for the classification based on such change. In the event that the Employer establishes a new classification within the bargaining unit, in addition to those now in existence, the Employer will provide to the Union a copy of the job description and the wage range for such position. Within seven (7) calendar days following

EXHIBIT A
21

receipt of such information, the Union may request a meeting with the Employer to discuss the job duties for such position and to meet and confer regarding the wage range for such new classification.

## ARTICLE XVIII
## NON-DISCRIMINATION

**Section 18.01.** **Union Activities**:  Neither the Union nor the Employer will engage in conduct that would constitute unlawful discrimination under the National Labor Relations Act. Union activities shall not interfere with the normal operations of the Employer.

**Section 18.02.** **Other Protected Status**:  Neither the Union nor the Employer shall unlawfully discriminate against any employee on the basis of race, color, religion, sex, national origin, age, marital status, veteran status, ancestry, mental or physical disability, medical condition (cancer related), sexual orientation or any other status protected by State or Federal law.

## ARTICLE XIX
## HEALTH AND SAFETY

**Section 19.01.** **Compliance**:  The Employer shall continue to comply with all applicable laws relating to workplace health and safety.  Disputes under this Section shall not be subject to the grievance procedure of this Agreement and shall continue to be subject to the applicable administrative procedures established by California or federal law.  The Union also may address health and safety issues through the Labor/Management Committee.

**Section 19.02.** **Reporting Health and Safety Hazards by Employees**:  It is the duty of each employee to comply with all health and safety regulations of the Employer and if any safety or health hazard is detected by an employee, the employee shall promptly report it to the Employer.  An employee's failure to comply with health and safety regulations, or to promptly report a detected health or safety hazard, may result in disciplinary action.

**Section 19.03.** **In-Service**:  The Employer shall continue to provide in-service or other training and information to employees concerning health and safety.

**Section 19.04.** **Hepatitis B Vaccine**:  Hepatitis B vaccine shall continue to be made available free of charge and at a covered employee's request, if the employee's normal functions include exposure to blood, blood products, bodily fluids, or needle sticks or cuts by other sharps that may have patient blood, blood products, or body fluids on them.  Such vaccine also will continue to be provided to other employees, at their request, if their normal functions do not include such exposure but the employee has an on-the-job needle stick, or cut, or becomes otherwise exposed as described.

EXHIBIT A
22

## ARTICLE XX
## HOURS OF WORK

### Section 20.01. Definitions

1.  "Workday" means a fixed twenty-four (24) hour period designated by the Employer.

2.  "Workweek" means seven (7) consecutive workdays designated by the Employer.

3.  "Pay period" means two (2) consecutive workweeks.

The Employer agrees that it will only change the workday, workweek, or pay period in compliance with the provisions of the Fair Labor Standards Act and after notifying the Union. The Employer will post notices indicating the "workday," "workweek" and "pay period" for employees. The Employer shall not change the definition of workweek or workday to avoid overtime payments for consecutive hours worked beyond the defined period.

### Section 20.02. No Guarantee: Nothing in this article shall be construed to constitute a guarantee of hours of work per day or per week or of days of work per week.

### Section 20.03. Work Schedules: Work schedules shall be posted a minimum of two (2) weeks in advance of their commencement dates. Once posted, schedules may be changed based on previously unforeseen staffing needs or in case of emergency. In such cases, to the extent feasible, the Employer first will solicit volunteers for the schedule change. If there are insufficient volunteers, or if time does not permit solicitation of volunteers, schedule changes will be made in reverse order of seniority among available employees in the affected department, classification and shift. All such changes shall be made promptly, must be authorized by the responsible supervisor in writing and will be promptly posted. Affected employees will be directly notified of the change in a timely manner. Nothing herein shall be construed to prevent schedule changes resulting from requests by the employees affected by the change, provided that written approval from the responsible supervisor is received. Unless a change is made to the normal schedule, nothing herein shall be construed to require the posting of work schedules for those departments or units in which such schedules do not routinely fluctuate. The Employer shall make every reasonable effort to provide employees with regular shift assignments.

### Section 20.04. Shift Trades: Scheduled employees may trade or share shifts or days provided that the manager approves and that the trade or sharing does not result in increased overtime or extra shift premium costs for the Employer. Trades or sharing may be made with an employee with the required qualifications and competencies who normally performs work in the same classification, unless a trade with a different classification is approved. Subject to the foregoing and with prior approval, trades or sharing with part-time, per diem or casual employees will be permitted.

### Section 20.05. Meal Periods: Each employee working at least five (5) consecutive hours shall be entitled to an unpaid meal period of at least thirty (30) minutes. Meal periods are not considered as time worked provided that the meal period is at least thirty (30) minutes long and

EXHIBIT A
23

the employee is completely relieved of all duty. Employees who work in excess of five (5) consecutive hours but less than six (6) consecutive hours may voluntarily waive the meal period.

**Section 20.06. Rest Periods**: Each employee shall receive a ten (10) minute rest period for each four (4) hours worked or major portion thereof. Employees are to be free from any work responsibility or interruption during their rest period; however, in cases of emergency employees will be expected to reschedule their rest period during the shift. The Employer will make every reasonable effort to allow employees to reschedule their rest periods within the defined period. Rest periods are considered as time worked.

**Section 20.07. Reporting Pay**: Each workday that an employee is required to report for work and does report, but is not put to work or is furnished less than one-half (1/2) of said employee's usual or scheduled day's work, the employee shall be paid for one-half (1/2) the usual or scheduled day's work, but in no event for less than two (2) nor more than four (4) hours, at the employee's base rate of pay. This Section shall not apply in the event that (i) the employee is told directly not to report prior to the time that said employee leaves his or her regular place of residence, (ii) the Hospital makes a reasonable effort to notify the employee not to report at least two (2) hours prior to his or her scheduled starting time, (iii) the employee reports to work unfit, (iv) the employee refuses to perform available work that is reasonably similar to his or her normal job functions, (v) the employee leaves work of his or her own volition or is sent home for disciplinary reasons prior to completion of one-half (1/2) of said employee's usual or scheduled day's work, or (vi) strikes, acts of God or other circumstances beyond the reasonable control of the Hospital interfere with the work being performed. It shall be the employee's responsibility to keep the Hospital notified of the employee's current address and telephone number. Failure to do so shall constitute a waiver of any benefits under this Section.

**Section 20.08. Split Shifts**: "Split shift," means a work shift which is interrupted by non-paid non-working periods established by the Employer, other than bona fide rest or meal periods. The working of split shifts shall be voluntary.

**Section 20.09. Shift Rotation**: The Employer shall prefer for floating or rotating shift assignments, those employees who are hired for a floating or rotating shift schedule and those employees who request such a schedule. Job postings for these positions shall be clearly labeled as a job with a rotating shift and/or one that requires a floating shift.

**Section 20.10. Days Off**: The Employer shall schedule an employee off on two (2) consecutive days each week where sufficient staffing exists, provided that days off may be split or rotated as needed because of weekend scheduling. Nothing herein shall require the Employer to hire additional staff, transfer staff from other work areas or expend additional funds in order to provide consecutive days off. This Section shall not apply to employees who volunteer to work without consecutive days off.

**Section 20.11. Assignment of Overtime/Additional Hours**: Additional hours in the affected department, classification and shift shall be offered first to regular full-time and regular part-time employees who have been called off during that pay period. If no such situation exists, additional hours shall be offered in the following order:

1.  Regular full-time and regular part-time employees, by rotation in order of seniority, for whom the additional hours will not result in overtime.

2.  Per diem and casual employees for whom the additional hours will not result in overtime.

3.  Regular full-time and regular part-time employees, by rotation in order of seniority, for whom overtime will apply.

4.  Per diem and casual employees for whom overtime will apply.

**Section 20.12. Rest Between Shifts**:  The Employer shall not require an employee to work a shift which commences within twelve (12) hours following the end of the employee's last scheduled shift, with the exception of employees working a twelve (12) hour shift who have an unbroken rest period of at least eleven and one-half (11½) hours between shifts.  Overtime for which premium pay is given shall count as a rest period for purposes of this Section.  Nothing herein shall preclude an employee from voluntarily agreeing to work such a shift.

### ARTICLE XXI
### LEAVES OF ABSENCE

**Section 21.01. Family Leaves of Absence**:  The Employer will comply with the provisions of the California Family Rights Act, as amended, and with the provisions of the Federal Family and Medical Leave Act of 1993, as amended.

### ARTICLE XXII
### BEREAVEMENT LEAVE

**Section 22.01. Eligibility**:  All Bargaining Unit employees who are regularly scheduled to work at least forty (40) hours per fourteen (14) day pay period shall be eligible to receive pay for up to three (3) scheduled work days for absences due to a death of their immediate family.  In the event of a death occurring outside the state of California, the employee shall be eligible to receive pay for up to four (4) scheduled work days.  For purposes of this Article XXII, "immediate family" includes the employee's mother, father, step-parent, brother, sister, spouse, eligible domestic partner, children (natural, adopted, or step children), grandparents, grandchildren, mother-in-law or father-in-law.

**Section 22.02. Procedure**:  The paid leave provided by this Article XXII must be taken within a consecutive two (2) week period from the first day taken following the death.  The employee shall notify his or her supervisor of the family member's death and the days that the employee would like to schedule the leave.  If the employee wishes to be relieved from duty for more than the days specified in Section 22.01 above, the employee shall be granted time off without pay, consistent with the efficient delivery of patient care and other clinical needs.  The employee may utilize accrued paid leave for such additional days of absence.

EXHIBIT A
25

## ARTICLE XXIII
## JURY DUTY AND WITNESS SERVICE

**Section 23.01. Jury Duty**: An employee who is called for jury duty shall be granted a leave of absence for this purpose, provided that such employee gives the Employer reasonable advance notice of his or her obligation to serve. Any time served on jury duty shall be without pay, except that an employee may use accrued paid leave benefits. If an employee is called for jury duty, the Employer will promptly provide, after the employee's submission of the jury duty notice to the Employer, a letter concerning its policy of non-payment for jury duty. The Employer will make reasonable efforts to provide notice to employees concerning the availability of such a letter. In the event that the Employer, during the term of this Agreement, establishes a policy of providing jury duty pay for non-bargaining unit employees, bargaining unit employees shall be entitled to the same benefit.

**Section 23.02. Court Appearances**: An employee who is required as part of the responsibilities of his or her job to appear as a witness in court, or who is subpoenaed on behalf of the Employer to appear in court, shall be compensated for such time at his or her regular straight-time hourly rate. Before receiving such compensation, an employee must show proof of such court attendance.

## ARTICLE XXIV
## PAID LEAVE

**Section 24.01. Eligibility and Accrual**: Paid leave benefits are provided in lieu of vacation and holiday pay, and can be utilized for either or both purposes. All benefit-eligible Bargaining Unit employees who are regularly scheduled to work at least forty (40) hours per 14-day period shall be eligible to accrue paid leave on regular hours paid up to eighty (80) hours per pay period as set forth below. Regular hours include regular day, evening or night work; paid leave and bereavement hours paid; and regular hours paid for work on holidays.

| Completed Length of Service | Accrual / Hour up to 80* | Maximum Hours Per Year | Maximum Balance |
|---|---|---|---|
| Under 5 years | .08846 | 184 hours | 340 hours |
| 5 years but less than 10 years | .10769 | 224 hours | 340 hours |
| 10 years or more | .12696 | 264 hours | 340 hours |
| *per pay period | | | |

**Section 24.02. Utilization of Paid Leave**: The use of paid leave requires advance approval of the employee's immediate supervisor. Supervisors may deny use of paid leave when the department may be without adequate staffing, provided that any such denial is not inconsistent with current practice within the Individual Unit. In the first ninety (90) days of employment, unearned paid leave may be granted, to a maximum of 24 hours, for hospital-observed holidays. The negative leave balance will be reduced as paid leave is earned. Paid leave will be paid out at the employee's base hourly rate (the employee's normal hourly pay rate exclusive of any bonus, differential, incentive, premium or on-call pay) at the time of utilization; provided that employees whose normal schedule includes overtime hours shall receive one and

one-half their base hourly wage rate for paid leave hours which are utilized in place of overtime hours which the employee otherwise would have worked as part of their normal schedule.

**Section 24.03. Cash Out**: Up to eighty (80) hours of paid leave may be cashed out once each year pursuant to the terms and conditions set forth in Employer Policy No. 502. Paid leave will be cashed out at the employee's base hourly wage rate at the time of cash out; provided that employees whose normal schedule includes overtime hours shall receive one and one-half their base hourly wage rate of paid leave hours which they cash out which would have been paid at such rate had they taken leave pursuant to Section 24.02 above. Paid leave cashed out at the time of termination will be cashed out at the employee's base hourly wage rate at the time of termination; provided that employees whose normal schedule includes overtime hours shall receive one and one-half their base hourly wage rate of paid leave hours which they cash out at the time of termination which would have been paid at such rate had they taken paid leave pursuant to Section 24.02 above.

**Section 24.04. Conversion to Paid Leave Benefit**: Should either party wish to propose a paid time off benefit in lieu of paid leave under this Article XXIV and sick leave under Article XXV, it may do so by written notice to the other party between April 1 and April 15 of each year of this Agreement. Upon such notification the parties shall meet to discuss a paid time off benefit. If the parties are unable to reach agreement as a result of these discussions by May 15 of the year in which notification is given, the discussions shall be terminated and the terms of Article XXIV and Article XXV shall remain unchanged.

## ARTICLE XXV
## SICK LEAVE

**Section 25.01. Eligibility and Accrual**: All benefit-eligible Bargaining Unit employees who are regularly scheduled to work at least forty (40) hours per 14-day pay period shall be eligible to accrue sick leave on regular hours paid up to eighty (80) hours per pay period at the rate of .03462 per regular hour paid. Regular hours include regular day, evening or night work; paid leave and bereavement hours paid; and regular hours paid for work on holidays. The maximum balance of accrued sick leave shall be 500 hours; no sick leave may be accrued by an employee who has a balance of 500 hours of accrued and unused sick leave.

**Section 25.02. Utilization of Sick Leave**: Accrued sick leave hours must be used for time off due to personal or family illness, health care appointments, adoption proceedings and/or maternity or paternity leave. Employees shall advise their immediate supervisor of a necessary absence as soon as possible. Sick leave will be paid out at the employee's base hourly wage rate (the employee's normal hourly pay rate exclusive of any bonus, differential, incentive, premium or on-call pay) at the time of utilization; provided that employees whose normal schedule includes overtime hours shall receive one and one-half their base hourly wage rate for sick leave hours which are utilized in place of overtime hours which the employee otherwise would have worked as part of their normal schedule.

**Section 25.03. Coordination of Sick Leave With State Disability Insurance**: If an employee's illness or disability for which sick leave is utilized continues for at least seven (7) consecutive (calendar) days or if hospitalization is necessary, the employee must apply for State

Disability Insurance (SDI). Sick leave will then be used to supplement the benefit received from SDI at the rate of a minimum of ten (10) sick leave hours each pay period. When SDI benefits are exhausted, any remaining sick leave will be used if the employee is still unable to return to work.

**Section 25.04. Coordination of Sick Leave With Workers' Compensation Benefits**: If an employee's injury or illness is work related, the employee must file a Personnel Injury and Investigation Report with Employee Health. If the employee cannot work due to the work related injury or illness, accrued sick leave will be used for the initial three (3) day waiting period following the injury/illness. Following the first three (3) days absence, sick leave will be coordinated with workers' compensation temporary disability payments received by the employee. A minimum of ten (10) sick leave hours will be supplemented each pay period. When sick leave benefits are depleted, paid leave will be used to coordinate with workers' compensation benefits.

**Section 25.05. Forfeiture of Sick Leave**: Sick leave is forfeited upon termination of employment or transfer to a non-eligible position.

**Section 25.06. Conversion to Sick Leave Benefit**: Should either party wish to propose a paid time off benefit in lieu of paid leave under Article XXIV and sick leave under this Article XXV, it may do so by written notice to the other party between April 1 and April 15 of each year of this Agreement. Upon such notification the parties shall meet to discuss a paid time off benefit. If the parties are unable to reach agreement as a result of these discussions by May 15 of the year in which notification is given, the discussions shall be terminated and the terms of Article XXIV and Article XXV shall remain unchanged.

## ARTICLE XXVI
## EDUCATION

**Section 26.01. Tuition Assistance Program**: All Bargaining Unit employees covered by this Agreement who are regularly scheduled to work at least 40 hours per 14-day pay period and who have at least 12 months of continuous employment at a satisfactory level of performance are eligible to apply for benefits under the Employer's Tuition Assistance Program (TAP). The TAP reimburses eligible employees for job-related class fees, which are approved in advance and completed at an accredited institution with a grade of C or better. The class must result in the development of additional skills and/or knowledge relevant to the employee's current position. The TAP does not reimburse costs associated with conferences and seminars, and reimbursement will not be made to any employee who terminates employment prior to completing the class. Any eligible employee who wishes to receive TAP benefits must submit an application to his/her department manager, who will either approve or deny the application. The department manager shall approve said application unless good cause exists to disapprove.

**Section 26.02. Meeting and Training Time Pay**: Bargaining Unit employees covered by this Agreement shall be compensated at their base hourly wage rate of pay for attendance at all work-related or work-sponsored meetings, training, lectures, seminars and programs when the employees are required to attend by the Employer. For purposes of this Section 26.02, a meeting is a "required" meeting if attendance at the meeting is considered as part of the employee's

evaluation or if the employee is subject to discipline for non-attendance. Bargaining Unit employees covered by this Agreement shall not be compensated for voluntary attendance at meetings, training, lectures, seminars or programs where the employee's attendance is not required by the Employer, including attendance necessary to maintain the employee's certification.

Section 26.03. **Employer Sponsored Education**: The Employer desires to provide all employees the opportunity to improve their skills and receive training which would allow them to advance within the organization. The Employer provides meetings, training, lectures, seminars and programs to employees, free of charge or for a nominal fee, for the purpose of preparing employees for advancement. Attendance at such educational opportunities is voluntary, and Bargaining Unit employees covered by the Agreement shall not be paid for their time spent in attending such education.

Section 26.04. **Certifications**: The Employer does not reimburse employees for costs or compensate employees for their time associated with obtaining or maintaining any certification which is or becomes required for the position by law or by community standards. The Employer will continue to reimburse costs and compensate employees for their time associated with maintaining certifications that are mandated by the Employer in excess of those required by law or community standards, provided that when courses to maintain such certifications are offered at the Employer, the employee must attend the course at the Employer.

**ARTICLE XXVII**
**INSURANCE BENEFITS**

Section 27.01. **Continuation of Plans**: Except as hereinafter provided, the Employer shall maintain, during the term of this Agreement, the health, dental, vision, long-term disability and life insurance plans that were in effect on the effective date of this Agreement, or substantially equivalent plans. If, during the term of this Agreement, employees of the Employer who are not subject to a collective bargaining agreement receive a change in the eligibility criteria, benefits, deductibles or co-payments provided under any of such plans, the Employer may implement the same change for bargaining unit employees. The Employer shall give the Union thirty (30) calendar days prior written notice before implementing such change. If, during the term of this Agreement, the Employer negotiates a collective bargaining agreement that covers another bargaining unit and such agreement contains health, dental, vision, long-term disability and life insurance benefits that are superior to those benefits available to employees of this Bargaining Unit, the Employer agrees to provide those same superior benefits to this Bargaining Unit.

Section 27.02. **Change of Carriers**: The Employer shall have sole discretion with respect to the selection of carriers or administrators for the plans referred to Section 27.01 above; provided, however, that the Employer shall give the Union thirty (30) calendar days prior written notice before it changes such carriers or administrators or becomes self-insured.

Section 27.03. **Employee Contributions**: Except as hereinafter provided, eligible employees shall contribute, for the term of this Agreement, at the contribution rates set forth in Schedule B. If, during the term of this Agreement, eligible employees of the Employer who are

EXHIBIT A
29

not subject to a collective bargaining agreement receive a change in the contribution rates for the same elected coverage, the Employer may implement such change for bargaining unit employees. If during the term of this Agreement, the Employer negotiates a reduction in the contribution rates for employees covered under a different collective bargaining agreement, the Employer agrees that those same reduced contribution rates will be applied in this Bargaining Unit. Contribution rates for bargaining unit employees pursuant to this Section may only be increased in response to carrier premium rate increases and in no event may an employee's proportionate share of the total premium for his or her elected coverage exceed the proportionate share that existed prior to the increase in contribution rate. The Employer shall give the Union thirty (30) calendar days prior written notice before implementing such change.

**Section 27.04. Contribution Rate Credit**:  Notwithstanding the provisions of Section 26.03 above, all employees whose base hourly wage rate is fifteen dollars ($15.00) per hour or less shall receive a credit of up to thirty-five dollars ($35.00) per pay period, not to exceed the employee's actual contribution rate for the plan or tier selected, to offset their contribution in that pay period for health insurance coverage. All employees whose base hourly wage rate is above fifteen dollars ($15.00) but less than seventeen dollars ($17.00) shall receive a credit of up to fifteen dollars ($15.00) per pay period, not to exceed the employee's actual contribution rate for the plan or tier selected, to offset their contribution in that pay period for health insurance coverage. Eligibility for this credit shall be determined based upon the Bargaining Unit employee's base hourly rate at the time of the Employer's benefit open enrollment period. An employee who is eligible for this credit at the time of the Employer's benefit open enrollment period shall retain such eligibility for the corresponding benefit plan year. Eligibility will be reviewed annually.

**Section 27.05. Health Insurance Benefits Liaison**:  The position of the Union Health Insurance Benefits Liaison shall be established for the term of this Agreement. The Union Health Insurance Benefits Liaison position shall be compensated at the Liaison's appropriate base hourly rate (8 hour rate) for time spent performing liaison duties up to a maximum of twelve (12) hours per week. The Union Health Insurance Benefits Liaison shall bring issues relating to health insurance involving bargaining unit members to the Employer's Benefits Team Leader, and shall otherwise interact with such Team Leader relating to health insurance issues. The Union Health Insurance Benefits Liaison and the Union Field Representative or designee will be invited to participate and provide input in meetings with the Hospital's insurance broker where annual plan premium adjustments and design are being discussed.

## ARTICLE XXVIII
## RETIREMENT

**Section 28.01. Continuation of Plans**:  Except as hereinafter provided, the Employer shall maintain, during the term of this Agreement, the defined benefit pension plan and the retirement savings plan that it had in effect on the effective date of this Agreement, or substantially equivalent plans. If, during the term of this Agreement, eligible employees of the Employer who are not subject to a collective bargaining agreement receive enhancements in either such plan, or a change resulting from legal requirements, the Employer may implement the same change for bargaining unit employees. The Employer shall give the Union thirty (30) calendar days prior written notice before implementing such change. The SEIU Health Insurance

Benefits Liaison and the SEIU Field Representative or designee will be invited to participate in a plan redesign meeting prior to a final decision by the Employer regarding implementation of any such change.

**Section 28.02. Eligibility**:  The requirements for eligibility and participation in each such plan shall be governed by the terms of said plan.

**ARTICLE XXIX**
**WAGES**

**Section 29.01. Wage Scales**

a.    Effective September 10, 2006, the wage ranges applicable to employees covered by this Agreement shall be as set forth in wage Schedule "A-1", which is attached hereto.  On such date, individual market-based wage adjustments will be effective as referenced in Schedule "A-1".

b.    Effective September 10, 2006, any bargaining unit employee whose base hourly wage rate is less than $10.00 after the increases referenced in Schedule "A-1" shall have such rate adjusted to that amount.  An employee's "base hourly wage rate" is the employee's normal hourly rate exclusive of any bonus, differential, incentive, premium, on-call pay.

c.    Effective January 14, 2007, Bargaining Unit employees shall receive a longevity increase to their base hourly wage rates, subject to the applicable range maximum, as follows:

| Full Years of Service at CHSD | Percent Increase |
|---|---|
| 0 - 1 | 0 |
| 2 - 4 | .5 |
| 5 - 7 | 1.0 |
| 8 - 10 | 1.25 |
| 11 - 14 | 1.5 |
| 15+ | 1.75 |

If the percentage longevity increase would cause an employee's base hourly rate to exceed the range maximum, the employee shall receive an increase to the range maximum and also shall receive a lump sum payment for the difference between the larger percentage amount and the percentage increase to range maximum.  Per Diem employees, to be eligible for such longevity increase, must have worked at least 1000 hours in the twelve (12) month period immediately preceding the effective date of the increase.

d.    Effective the first full pay period following July 1, 2007, the wage ranges applicable to employees covered by this Agreement shall increase by four percent (4%), as set forth in Schedule "A-2".  On such date, eligible bargaining unit employees shall have their base hourly wage rates increased by four percent (4%) except that in no event shall an employee's base hourly wage rate exceed the maximum rate for the applicable range.

EXHIBIT A
31

e.     Commencing the first full pay period ninety (90) days following the effective date of this Agreement, a Bargaining Unit employee working twelve-hour shifts will have his or her base hourly wage rate increased by a factor of 1.167 and a Bargaining Unit employee working ten-hour shifts will have his or her base hourly wage rate increased by a factor of 1.10. The applicable wage ranges as of this date shall be as set forth in Schedule "A-3".

f.     Effective the first full pay period following January 1, 2008, Bargaining Unit employees shall receive another longevity increase to their base hourly wage rate according to the same criteria, contingencies and process as set forth in paragraph c of this Section.

g.     Effective the first full pay period following July 1, 2008, the wage ranges applicable to employees covered by this Agreement shall increase by four percent (4%), as set forth in Schedule "A-4". On such date, eligible bargaining unit employees shall have their base hourly wage rates increased by four percent (4%) except that in no event shall an employee's base hourly wage rate exceed the maximum rate for the applicable range.

h.     Effective the first full pay period following January 1, 2009, Bargaining Unit employees shall receive another longevity increase to their base hourly wage rate according to the same criteria, contingencies and process as set forth in paragraph c of this Section.

i.     To be eligible for the increases in paragraphs d and g of this Section, an employee must have received an overall rating of "proficient" or better on his or her most recent performance evaluation and must not be on a performance improvement plan.

j.     The Employer reserves the right, in its sole discretion, to award lump sum bonuses to individual employees for exceptional performance. The Employer also reserves the right, in its sole discretion, to increase pay rates and wage scales above and beyond those negotiated in this Agreement for individuals, groups of employees, a classification or classifications or for the entire Bargaining Unit.

k.     Notwithstanding the foregoing provisions, an employee who, on the effective date of this Agreement, is receiving an hourly wage in excess of the applicable range shall not suffer a reduction in his or her hourly wage rate as a result of the execution of this Agreement.

**Section 29.02. Overtime**:   Until the date of the adjustment set forth in Section 29.01, paragraph e, above, employees in the bargaining unit shall receive overtime compensation in accordance with the Employer policies that were in effect immediately prior to the effective date of this Agreement. Commencing on that date, employees shall be compensated for work performed in excess of their regularly scheduled shift per workday (if such regularly scheduled shift is 8 or more hours) or in excess of forty (40) hours per work week at the rate of one one-half (1.5) times the employee's regular hourly rate of pay, except that all work performed in excess of twelve (12) hours in a workday, regardless of an employee's regularly scheduled shift, shall be compensated at the rate of two (2) times the employee's regular hourly rate of pay. Except for rest periods, only hours actually worked shall be considered for purposes of computing overtime. There shall be no pyramiding, duplication or compounding of overtime payments for the same hours worked. Employees shall not be required to work overtime except

EXHIBIT A
32

in the event of a local or national disaster or if interruption of patient care already in process (e.g. surgery) would jeopardize patient safety.

**Section 29.03. Standby and Call-Back Pay**: Employees who are on standby shall be paid four dollars ($4.00) for each hour as set forth in the wage schedules referenced above. Hours on standby shall not be considered hours worked for any purposes. All call-back hours shall begin upon arrival at the work site and shall be paid at time and one-half the employee's regular hourly rate of pay. The evening and/or night shift differential specified in Section 29.04 below shall be added to the employee's regular hourly rate of pay for all call-back hours worked during the evening shift and/or night shift as defined in Section 29.04 below. Employees who are called in to work shall be guaranteed a minimum of either two hours of work or pay as if two hours had been worked.

**Section 29.04. Shift Differential**: Hourly evening and night shift differentials will be paid at the rates set forth in the wage schedules referenced above, which includes a 10% increase in shift differential premiums, effective September 10, 2006. An evening shift differential will be paid for the entire eight or ten hour shift where four or more hours are worked after 5:00 pm and before 12:00 midnight. A night shift differential will be paid for the entire eight or ten hour shift where four or more hours are worked after 12:00 midnight and before 7:00 a.m. Employees who work approved twelve hour shifts will receive night shift differential for all hours worked between 7:00 p.m. and 7:30 a.m. Overtime hours may be eligible for the applicable evening or night shift differential if at least four or more overtime hours are worked between the 5:00 p.m. and midnight or midnight to 7:00 a.m. time periods. In this case, the qualifying differential will apply only to the overtime hours and not to the preceding or following shift. Shift differential is not paid for non-worked hours which may be paid, such as holiday or paid leave.

**Section 29.05. Holiday Premium**: Employees will be paid a premium rate of time and one-half their base hourly rate for scheduled hours worked on New Year's Day (5:00 p.m. December 31 to 11:59 p.m. January 1) Martin Luther King, Jr. Day, President's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day (5:00 p.m. December 24 to 11:59 p.m. December 25) if the following conditions exist:

1.    The employee is required to work by the supervisor or department manager and

2.    At least four hours worked fall within the identified holiday. New Year's Day shall be defined as running from 5:00 p.m. December 31 to 11:59 p.m. January 1, and Christmas Day shall be defined as running from 5:00 p.m. December 24 to 11:59 p.m. December 25.

Employees who are in a department or program that is not required to work a designated holiday will not receive the premium rate even though they may be permitted, at their own request, to work the holiday.

**Section 29.06. Per Diem Compensation**: All per diem employees will be paid on the same salary range as core staff. Department based committed per diem employees will receive an additional fifteen percent (15%) above their base rate as long as they maintain their

EXHIBIT A
33



commitment, and shall also be eligible to be considered for lump sum bonuses under Section 28.01, paragraph (j), above.

**Section 29.07. Weekend Differential**: For designated employees in accordance with the wage schedules referenced above, weekend differential shall be paid for all hours worked on shifts that commence on or after 7:00 p.m. on Friday and before 7:00 p.m. on Sunday.

**Section 29.08. Relief in a Higher Classification**: A bargaining unit employee who is temporarily assigned to perform, on a full-time basis, all the duties of an employee in a higher paying classification for five or more consecutive scheduled shifts shall receive a differential of five percent (5%) above his or her own base hourly wage for all hours worked in the higher paying classification during the entire period of such assignment.

**Section 29.09. Longevity Bonus**: Eligible Bargaining Unit employees shall receive an annual longevity bonus based on continued service with the Employer, in accordance with the following schedule:

| Years of Service | Bonus Amount |
| --- | --- |
| 20 through 24 | $750 |
| 25 or more | $1250 |

Payment of such bonus shall occur on the payday for the first full payroll period following the employee's anniversary date. For eligible employees whose anniversary date occurred between January 1, 2006 and the effective date of this Agreement, payment shall occur not later than the payday for the first full payroll period following ratification. To be eligible, an employee must have worked at least 1000 hours in the twelve (12) month period immediately preceding the employee's anniversary date and must remain actively employed at the Employer as of the date of payment. There shall be no proration of bonuses for employees who terminate prior to the date of the payment. Employees eligible for such bonus shall have the option to designate all or a portion of the bonus as a distribution directly to the employee's retirement savings plan account referenced in Section 28.01 of this Agreement, provided that such distribution would not cause the employee's contribution to such account to exceed the annual maximum allowed by law and the employee meets the other eligibility requirements for retirement savings plan participation. Any portion of the bonus which is not so designated shall be received by the employee in a payroll check, subject to applicable payroll deductions. Eligible employees will receive a form to be used for electing a bonus distribution option. The payment of a longevity bonus shall not affect the employee's base hourly wage rate.

**Section 29.10. Pay Days**: All wages shall be paid on the basis of two-week pay periods. Unless the current payday cycle is changed for all employees who are not subject to this Agreement, the Employer will maintain the current payroll cycle for Bargaining Unit employees. When a payday falls on a holiday, the Employer shall make paychecks available on the day before. Direct deposit shall continue to be offered to all employees and shall be transmitted to the designated financial institution. All records of paid time off accounts shall accurately reflect balances through the most recent pay period ending date.

EXHIBIT A
34

**Section 29.11. Evaluations**:  An employee shall be given a copy of any periodic written formal performance evaluation.  The contents of a performance evaluation shall not be subject to the grievance procedure of this Agreement and shall not be used as disciplinary action.

## ARTICLE XXX
## PAY CHECK ERRORS

### Section 30.01. Underpayment

1.    Employer errors resulting in underpayment to employees shall be corrected and an additional check for the underpayment amount shall be issued to the employee within two (2) business days following the Employer's discovery of such error (including being informed by the employee), unless the employee requests that such underpayment be added to his/her next regular paycheck.

2.    Upon timely notification from the employee, employee errors will be corrected as soon as possible but no later than the next paycheck.

3.    Situations where it may not be possible to adhere to these timelines include payroll weeks when processing a check would impede the processing of a regular payroll cycle or whenever the complex nature of the underpayment requires additional time and/or research to verify the amount owed.  In such cases the employee will be notified of the reasonably expected payment date and the Employer will make every reasonable effort to complete the process as soon as possible.

**Section 30.02. Overpayment**:    Unless mutually agreed otherwise, payment errors resulting in overpayments shall be corrected by either lump sum payment or the overpayment amount being deducted prorata over the same number of pay periods as they occurred, at the employee's option.  In no event will the Employer be required to extend the repayment period beyond thirteen (13) pay periods, except that the deduction for a full-time or regular part-time employee in any pay period shall not exceed ten percent (10%) of his or her regular bi-weekly net pay based upon FTE status.

## ARTICLE XXXI
## RIGHTS OF MANAGEMENT

**Section 31.01. Management Rights**:    The Employer retains all rights, powers and authority that are not specifically abridged by an express provision of this Agreement.  Without limiting the generality of the foregoing, examples of the rights, powers and authority retained exclusively by the Employer, and which may be exercised in its sole discretion unless abridged by an express provision of this Agreement, include but are not limited to the following:  to manage, direct and maintain the efficiency of its business and personnel; to determine the means and manner by which patient care is to be delivered to patients; to direct the work force; to increase or decrease the work force and/or determine the number of Bargaining Unit employees and other employees hired or to be retained and how they are to be assigned; to hire, transfer, promote, demote, suspend, discharge, and to lay-off employees; to determine staff and establish work standards, floating standards and requirements, schedules of operation and work load; and

EXHIBIT A
35

to specify or assign work requirements, overtime, or on-call responsibilities. The listing of management rights set forth in the preceding sentence is meant by way of explanation, not limitation. To the extent that any function of management is not expressly limited by this Agreement, such function may be exercised unilaterally. the Employer shall not be required to bargain with the Union concerning its exercise of its management rights or the effect of its exercise of those rights on the Bargaining Unit. Nothing in this Article XXXI shall restrict the Union or Bargaining Unit employees from filing grievances concerning the application or interpretation of this Agreement nor consulting with the Employer about the possible consequences of management decisions that may affect Bargaining Unit employees.

**ARTICLE XXXII**
**ECONOMIC ACTION**

**Section 32.01. No Work Stoppages**

A.    During the term of this Agreement, neither the Union nor its agents or representatives, nor any employees, individually or collectively, shall call, sanction, support or participate in any strike, work stoppage, picketing, sit-down, slowdown, or any refusal to enter the Employer's premises, or any other interference with any of the Employer's services or operations, or with the movement or transportation of goods to or from the Employer's premises.

B.    The prohibitions of this Section shall apply whether or not (1) the dispute giving rise to the prohibited conduct is subject to any dispute resolution procedure provided under this Agreement; (2) such conduct is in support of a work stoppage or picketing conducted by any other organization; or (3) such conduct is in protest of an alleged violation of any state or federal law.

C.    If any conduct prohibited by the Section occurs, the Union shall immediately take all steps necessary to terminate such conduct.

**Section 32.02. Discipline**:  Any employee who participates in any activity prohibited by Section 32.01 shall be subject to discharge or such lesser discipline as the Employer in its sole discretion shall determine.

**Section 32.03. Remedies for Breach**:  The Employer and the Union shall be entitled to all appropriate remedies, including, but not limited to, injunctive relief and damages, if Section 32.01 or 32.04 of this Article are violated, without prior resort to any dispute resolution procedure provided under this Agreement, and whether or not the dispute giving rise to the conduct which violates such Section is subject to such procedure.

**Section 32.04. No Lockouts**:  There shall be no lockout of employees by the Employer during the term of this Agreement.

## ARTICLE XXXIII
## BULLETIN BOARDS

**Section 33.01. Bulletin Boards for Union Use**: The Employer shall provide a bulletin board or bulletin board space for the Union's exclusive use in all employee lounges. No material shall be posted until a copy has been provided to the Human Resources Director or designee. Posted material shall bear the date and identity of the Union. Posted material shall not violate any federal, state or county laws. In addition, the Union may not post any notice which (1) involves a politician or political candidate, or (2) disparages or demeans the Employer, its affiliates or related entities, or any individual, or the quality of services provided by the Employer.

## ARTICLE XXXIV
## LABOR MANAGEMENT COMMITTEE

**Section 34.01. Labor Management Committee**: The parties shall maintain a Labor Management Committee to be configured as follows: four (4) Bargaining Unit members selected by the Union and four (4) Administrative members selected by the Employer for a total membership of eight (8). The purpose of the Labor Management Committee is to create and support a partnership between the Employer and the Union in order to proactively discuss and resolve issues of concern, reach common goals and communicate same to the Employer organization. Individual personnel matters and matters which are subject to the grievance and arbitration procedure of this Agreement shall be excluded from such discussions. This Article shall in no way affect the application, interpretation or enforceability of Section 31.01 (Management Rights) of this Agreement, nor shall this Article be construed as imposing any bargaining obligation on the Union or the Employer during the term of this Agreement. The Labor Management Committee shall meet a minimum of once every three (3) months or at any other intervals mutually agreeable to the parties. Time spent by employees in Labor Management Committee meetings will be compensated by the Employer.

## ARTICLE XXXV
## SUBCONTRACTING

**Section 35.01. Subcontracting of Bargaining Unit Work**: In the event that the Employer intends to subcontract a business unit or function that results in displacement of Bargaining Unit employees, the Employer shall provide at least sixty (60) days notice to the Union of such intent. In such notice, the Employer shall provide a copy of the Request for Proposal (RFP). If there is no RFP, Employer shall provide information regarding the specific work involved and the business needs it seeks to address through such contracting, e.g., need to obtain special services and equipment that are not available internally, need to obtain expertise or efficiencies that are better provided through an outside contractor than by the Employer, or financial necessity. The Union shall have thirty (30) days to propose to Employer reasonable alternative(s) that address the business needs of Employer. The parties shall engage in meaningful discussion regarding Union's proposed alternative(s) within the next thirty (30) days following the Union's submission of its proposal. If after expiration of that thirty (30) day period Employer determines that such proposed alternative(s) will not address Employer's

business needs, the Employer may implement such contracting. The Employer shall request in writing of subcontractor that displaced Bargaining Unit employees be absorbed by subcontractor. In addition, the Employer shall require any such contractor to meet the minimum wage standards set by Employer, i.e., minimum hourly wage of $10.00/hour, for those contractor employees who work at Employer's facilities. The Employer will give preference in filling job openings to displaced Bargaining Unit employees who apply and are qualified, with only minimal orientation and/or minimal retraining not to exceed a total of thirty (30) calendar days, to do the job for which Employer has an opening.

## ARTICLE XXXVI
## SUCCESSORSHIP

**Section 36.01.** **Sale, Transfer of Control or Closure**: In the event of a sale or a transfer of control of the Employer or any of its facilities in which bargaining unit employees are employed, the Union shall be notified in writing as soon as practicable following execution of the agreement of sale or transfer, or thirty (30) calendar days prior to the effective date of sale or transfer, whichever is later. In the event of the closure of any facilities in which bargaining unit employees are employed, the Union shall be notified as soon as practicable following the decision to close or sixty (60) calendar days prior to the effective date of such closure, whichever is later. Nothing herein shall be construed to limit the Union's right to negotiate with the Employer regarding the impact of such succession or closure on employees covered by this Agreement.

## ARTICLE XXXVII
## PAGERS

**Section 37.01.** **Use of Pagers**: Arrangements shall be made by department management for coverage of pagers during an employee's meal period and break periods. In the event that an employee is required to respond to a pager during a meal period or break period, such response time shall be considered as time worked and compensated accordingly.

## ARTICLE XXXVIII
## LIABILITY INSURANCE

**Section 38.01.** **Liability Coverage**: The Employer carries liability insurance which includes bargaining unit employees in its employ while acting within the course and scope of employment and which includes provisions to defend and indemnify. The Employer will provide the Union with a copy of the current certificate of insurance and will maintain coverage at no less than current levels for the duration of this Agreement.

## ARTICLE XXXIX
## UNIFORMS

**Section 39.01.** **Required Uniforms**: Required uniforms shall be provided, and replaced as needed, by the Employer.

EXHIBIT A
38

## ARTICLE XL
## SAVINGS CLAUSE

**Section 40.01. Severability**: If any provision of this Agreement is found to be in conflict with any federal or state laws, or rendered or declared illegal, the remaining provisions of the Agreement shall remain in full force and effect. In such event the parties shall meet and negotiate concerning a substitute provision.

## ARTICLE XLI
## FULL NEGOTIATIONS, COMPLETE AGREEMENT AND WAIVER

**Section 41.01. Full Negotiations**: The Employer and the Union acknowledge that during the negotiations which resulted in this Agreement, each party had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of their respective rights and opportunities are fully set forth in this Agreement.

**Section 41.02. Complete Agreement**: Based upon Section 41.01 of this Article, as well as the understandings and agreements expressly set forth in this Agreement, it is understood and agreed that this Agreement fully and completely sets forth all existing understandings and obligations between the parties, that it constitutes the entire agreement between the parties, and that it sets forth all of the Employer's responsibilities, duties and obligations to the Union and Bargaining Unit employees for the duration of this Agreement, and that there are no understandings or agreements by the parties which are not expressly set forth in this Agreement.

**Section 41.03. Waiver**: The Employer and the Union, for the term of this Agreement, each voluntarily and unqualifiedly waive the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject, matter or practice involving the terms and conditions of employment of the Bargaining Unit, other than as specifically required by an express provision of this Agreement.

**Section 41.04. Policy Change**: The Employer will provide to the Union a copy of any changes to the Employer's written personnel policies, in advance of the time that such policies will be published and/or distributed, if those changes affect the wages, hours and terms and conditions of employment for members of the Bargaining Unit. If requested, the Employer will meet with the Union to discuss those policy changes prior to implementation, provided that a request for such meeting occurs within seven (7) days following notification and further provided that such meeting occurs within ten (10) calendar days following the request. The parties also agree that this meeting not only will allow prior input from the Union but also will provide the Union an opportunity to more fully understand the policy changes and thereby be better able to discuss those changes with its members. In cases of emergency when the Employer determines that a policy change must be adopted immediately without prior notice or meeting with the Union, the Employer shall provide notice and opportunity to meet at the earliest possible time following adoption of this policy change. Changes to policy cannot conflict with the terms of this Agreement. This Section shall in no way affect the application, interpretation or

enforceability of Section 31.01 (Management Rights) of this Agreement, nor shall this Section be construed as imposing any bargaining obligation on the Employer.

## ARTICLE XLII
## TERM OF AGREEMENT

**Section 42.01. Duration and Termination of Agreement**:  This Agreement shall be effective as of April 19, 2007 and shall remain in effect until midnight June 30, 2009.  This Agreement shall be automatically renewed and extended from year to year thereafter without addition, change or amendment, unless either party serves notice in writing to the other party not less than ninety (90) calendar days before the end of the term then in existence of its desire to terminate, change, amend or add to this Agreement.

## **SIGNATURES**

IN WITNESS WHEREOF, the parties hereby have executed this Agreement on this _____ day of _____, 2007

**Children's Hospital - San Diego**

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

**Service Employees International Union, Local 2028**

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

By _____

**EXHIBIT A**
**41**

## LETTER OF UNDERSTANDING

The Employer agrees to study the feasibility of permitting voluntary donations by employees from their Paid Leave (Article XXIV) accounts to assist other employees who are unable to work due to illness or injury. Such study will include the feasibility of allowing such donations without adverse tax consequences based on "constructive receipt." The Union Health Insurance Benefits Liaison and the Union Field Representative or designee will be invited to participate in a meeting to discuss the results of the study. Both parties agree to meet to discuss the details of the study, be allowed to do follow-up work to find a feasible outcome if necessary, and/or discuss a timeline to implement the program if the Employer determines that one will be implemented. In the event the Employer determines that permitting donations is feasible without such adverse tax consequences and further decides to implement a policy of allowing donations by employees who are not in the Bargaining Unit, the Employer shall offer to the Union the same policy for Bargaining Unit employees.

The foregoing Letter of Understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.

EXHIBIT A
42

## LETTER OF UNDERSTANDING

During the term of this Agreement, the following benefits currently in effect shall not be reduced or eliminated for Bargaining Unit employees unless such reduction or elimination is an overall Employer policy change affecting such benefits for Non-Bargaining Unit employees: cafeteria discounts, pharmacy discounts, and free parking.

The foregoing letter of understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.

**EXHIBIT A**
**43**

## LETTER OF UNDERSTANDING:  COMMITTEE TO STUDY STEP SYSTEM

An ad hoc Committee shall be established, not later than October 1, 2007, to jointly study and develop a recommended structure for a step system based on years of service that would apply to employees in the service and maintenance Bargaining Unit.  The Committee shall consist of not more than four (4) Bargaining Unit employees selected by the Union and not more than four (4) management representatives selected by the Employer.  The Committee will use its best efforts to provide a joint recommendation, not later than three (3) months prior to expiration of the current collective bargaining agreement, to the negotiating committees for the Union and the Hospital in connection with negotiations for a successor agreement.

The foregoing Letter of Understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.

EXHIBIT A
44

## LETTER OF UNDERSTANDING: STAFFING/PATIENT CARE ISSUES

The parties agree that, without limiting the generality of matters which may be discussed in the Labor Management Committee pursuant to Article XXXIV of the current collective bargaining agreement (which provides that the purpose of such Committee is to support a partnership between the Employer and the Union in order to proactively discuss and resolve issues of concern, reach common goals and communicate same to the Employer organization), such discussions may include issues related to staffing, operations and patient care delivery within the scope of practice of Bargaining Unit members.

The foregoing Letter of Understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.

EXHIBIT A
45

## **LETTER OF UNDERSTANDING**


        To the extent Employer requires Bargaining Unit employees to provide medical translation to those who are not proficient in English, only employees who have been certified by Hospital as medical translators will be required to provide such service. Medical translation, for purposes of this provision, is defined as: (1) obtaining informed consent; (2) obtaining medical history; (3) obtaining or providing information related to diagnosis; (4) providing discharge instructions;  and (5) translating written patient educational and instructional materials of a medical nature.

        The foregoing Letter of Understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.


**EXHIBIT A**
46

## LETTER OF UNDERSTANDING

The Employer acknowledges that certain work units have significant concerns, based on past experience, regarding the subcontracting of work they perform. In order to address these concerns, the Employer agrees, for the term of this Agreement, not to displace Bargaining Unit employees in Environmental Services or Food Services through subcontracting unless so required by regulatory agencies or accrediting entities.

The foregoing Letter of Understanding shall be deemed incorporated by reference in the April 19, 2007 through June 30, 2009 Collective Bargaining Agreement between the parties.

EXHIBIT A
47

SCHEDULE A1

| Job Code | Title | Grade | Current Range Min | Mid | Max | Shift Diff PM | Night | 4% Adjustment Min | Mid | Max | Shift Diff PM | Night | Grade | New Range Based on Market Min | Mid | Max | yrs shift diff PM | Night | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25202 | (S) ADMIN ASSOC (SKILL B) | 25.01 | 12.48 | 15.26 | 18.07 | 1.00 | 1.50 | 12.96 | 15.87 | 18.79 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 25005 | (S) ADMIN ASSOC (SKILL B) P/D | 25.01 | 12.46 | 15.26 | 18.07 | 1.00 | 1.50 | 12.96 | 15.87 | 18.79 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 25203 | (S) ADMIN ASSOC (SKILL B") | 31.02 | 14.46 | 17.71 | 20.97 | 1.00 | 1.50 | 15.04 | 18.42 | 21.81 | 1.00 | 1.50 | S39 | 17.64 | 21.61 | 25.58 | 1.10 | 1.65 | Incumbent=5% increase |
| 25203.1 | (S) ADMIN ASSOC (SKILL B") [10 HR] ALT | 31.02 | 14.46 | 17.71 | 20.97 | 1.00 | 1.50 | 15.04 | 18.42 | 21.81 | 1.00 | 1.50 | S39 | 17.64 | 21.61 | 25.58 | 1.10 | 1.65 | Incumbent=5% increase |
| 25201 | (S) ADMIN ASSOC (SKILL C) | 13.01 | 9.27 | 11.35 | 13.44 | 1.00 | 1.50 | 9.64 | 11.80 | 13.98 | 1.00 | 1.50 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.65 | Incumbent=5% increase |
| 25201.12 | (S) ADMIN ASSOC (SKILL C) (12) | 13.121 | 7.85 | 9.73 | 11.55 | 1.00 | 1.50 | 8.27 | 10.12 | 11.98 | 1.00 | 1.50 | S19.12 | 9.23 | 11.31 | 13.38 | 1.10 | 1.38 | Incumbent=7.5% increase |
| 25204 | (S) ADMIN ASSOC (SKILL C) P/D | 13.01 | 9.27 | 11.35 | 13.44 | 1.00 | 1.50 | 9.64 | 11.80 | 13.98 | 1.00 | 1.50 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.65 | Incumbent=5% increase |
| 25204.12 | (S) ADMIN ASSOC (SKILL C) P/D (12) | 13.121 | 9.45 | 9.73 | 11.52 | 1.00 | 1.25 | 8.27 | 10.12 | 11.98 | 1.00 | 1.25 | S19 | 9.23 | 11.31 | 13.38 | 1.10 | 1.38 | Incumbent=7.5% increase |
| | (S) AUTO SET-UP ASSISTANT | 11 | 8.82 | 10.80 | 12.79 | 1.00 | 1.50 | 9.17 | 11.23 | 13.30 | 1.00 | 1.50 | S16 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | |
| 90258 | (S) BEHAVIORAL TREATMENT TECHNICIAN | 29 | 13.76 | 16.85 | 19.95 | 1.00 | 1.50 | 14.31 | 17.52 | 20.75 | 1.00 | 1.50 | S45 | 14.48 | 17.74 | 21.00 | 1.65 | 1.38 | |
| 10976 | (S) BIO MED TECH I | 37.03 | 16.76 | 20.53 | 24.30 | 1.00 | 1.50 | 17.43 | 21.35 | 25.27 | 1.00 | 1.50 | S45 | 20.45 | 25.05 | 29.65 | 1.65 | 2.75 | |
| 10977 | (S) BIO MED TECH I P/D | 37.03 | 16.76 | 20.53 | 24.30 | 1.00 | 1.50 | 17.43 | 21.35 | 25.27 | 1.00 | 1.50 | S45 | 22.02 | 26.98 | 31.93 | 1.65 | 2.75 | |
| 10979 | (S) BIO MED TECH II | 40.04 | 18.04 | 22.10 | 26.16 | 1.00 | 1.50 | 20.71 | 22.99 | 27.21 | 1.00 | 1.50 | S54 | 24.30 | 29.77 | 35.24 | 1.65 | 2.75 | |
| 10980 | (S) BIO MED TECH III | 36 | 16.50 | 24.59 | 29.70 | 1.00 | 1.50 | 17.00 | 26.02 | 24.55 | 1.00 | 2.20 | S42 | 18.99 | 23.27 | 27.54 | 1.10 | 2.20 | |
| 60113 | (S) BLDG MAINTENANCE TECH | 27 | 13.10 | 16.04 | 18.99 | 1.00 | 1.25 | 13.62 | 16.68 | 19.75 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 60103 | (S) BUSINESS ASSOC 1A (12) | 21.121 | 9.88 | 11.85 | 14.03 | 1.00 | 1.50 | 10.07 | 12.32 | 14.59 | 1.00 | 1.50 | S24.12 | 10.45 | 12.80 | 15.15 | 1.10 | 1.65 | |
| 25204 | (S) BUSINESS ASSOC 1A (12) P/D | 21.121 | 9.88 | 11.85 | 14.03 | 1.00 | 1.50 | 10.07 | 12.32 | 14.59 | 1.00 | 1.50 | S24.12 | 10.45 | 12.80 | 15.15 | 1.10 | 1.65 | |
| 25000 | (S) BUSINESS ASSOC 1A (B) | 21.01 | 11.29 | 13.83 | 16.37 | 1.00 | 1.50 | 11.74 | 14.38 | 17.02 | 1.00 | 1.50 | S24 | 12.19 | 14.94 | 17.68 | 1.10 | 1.65 | |
| 25003 | (S) BUSINESS ASSOC 1A (B) P/D | 21.01 | 11.29 | 13.83 | 16.37 | 1.00 | 1.50 | 11.74 | 14.38 | 17.02 | 1.00 | 1.50 | S24 | 12.19 | 14.94 | 17.68 | 1.10 | 1.65 | |
| 25001 | (S) BUSINESS ASSOC 1A (10) ALT | 21.01 | 11.29 | 13.83 | 16.37 | 1.00 | 1.50 | 11.39 | 13.95 | 16.52 | 1.00 | 1.50 | S24 | 11.53 | 14.13 | 16.72 | 1.10 | 1.65 | |
| 25007 | (S) BUSINESS ASSOC 1B (12) | 26.01 | 12.76 | 15.68 | 18.53 | 1.00 | 1.25 | 13.29 | 16.28 | 19.27 | 1.00 | 1.25 | S28 | 13.45 | 16.48 | 19.50 | 1.10 | 1.38 | |
| 12010.1 | (S) BUSINESS ASSOC (B) | 31.02 | 14.46 | 17.71 | 20.97 | 1.00 | 1.50 | 15.04 | 18.42 | 21.81 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.65 | |
| 12010 | (S) BUSINESS ASSOC (B) | 31.02 | 14.46 | 17.71 | 20.97 | 1.00 | 1.50 | 15.04 | 18.42 | 21.81 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.65 | |
| 25223 | (S) BUSINESS ASSOC/IA (B) | 33 | 15.19 | 18.60 | 22.02 | 1.00 | 1.50 | 15.80 | 19.34 | 22.90 | 1.00 | 1.50 | S39 | 15.64 | 19.15 | 22.66 | 1.10 | 1.65 | Incumbent=5% increase |
| 40026 | (S) CASE AIDE | 6 | 7.79 | 9.54 | 11.30 | 1.00 | 1.25 | 8.10 | 9.92 | 11.75 | 1.00 | 1.25 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | Incumbent=1.5% increase |
| 40027 | (S) CASE AIDE P/D | 6 | 7.79 | 9.54 | 11.30 | 1.00 | 1.25 | 8.10 | 9.92 | 11.75 | 1.00 | 1.25 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | Incumbent=1.5% increase |
| 40024 | (S) CHILD ENRICHMENT AIDE | 6 | 7.79 | 9.54 | 11.30 | 1.00 | 1.25 | 8.10 | 9.92 | 11.75 | 1.00 | 1.25 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | |
| 40025 | (S) CHILD ENRICHMENT AIDE P/D | 6 | 7.79 | 9.54 | 11.30 | 1.00 | 1.25 | 8.10 | 9.92 | 11.75 | 1.00 | 1.25 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | |
| 40909 | (S) CLINICAL ASSIST (LEV 1) | 1.03 | 6.89 | 8.44 | 9.99 | 1.00 | 1.50 | 7.17 | 8.78 | 10.39 | 1.00 | 1.50 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.65 | |
| 40900 | (S) CLINICAL ASSIST (LEV 1) | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.50 | 11.46 | 14.03 | 16.61 | 1.00 | 1.50 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 40900.2 | (S) CLINICAL ASSIST (LEV 1) ALT | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.50 | 11.46 | 14.03 | 16.61 | 1.00 | 1.50 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 40920 | (S) CLINICAL ASSIST (LEV 2) P/D | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.50 | 11.46 | 14.03 | 16.61 | 1.00 | 1.50 | S22 | 13.80 | 15.68 | 18.56 | 1.10 | 1.38 | |
| 40910 | (S) CLINICAL ASSIST (LEV 2) | 24 | 12.16 | 14.89 | 17.63 | 1.00 | 1.50 | 12.65 | 15.49 | 18.34 | 1.00 | 1.50 | S24 | 14.84 | 16.18 | 21.52 | 1.10 | 2.20 | |
| 40930 | (S) CLINICAL ASSIST 1 (B) | 30.03 | 14.11 | 17.28 | 20.45 | 1.00 | 1.50 | 14.88 | 17.99 | 23.42 | 1.00 | 1.50 | S28 | 10.51 | 14.22 | 16.82 | 1.10 | 1.38 | |
| 32008 | (S) CLINICAL CARE ASSISTANT | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | 1.00 | 1.25 | S36 | 18.38 | 20.07 | 23.75 | 1.10 | 1.65 | |
| 40158 | (S) CM/PROGRAM SPEC ASSOCIATE | 34.01 | 15.57 | 19.07 | 22.58 | 1.00 | 1.50 | 16.19 | 19.83 | 23.47 | 1.00 | 1.50 | S25 | 12.49 | 15.30 | 18.11 | 1.10 | 1.38 | |
| 40155 | (S) CM/PROGRAM SPEC PRECEPTOR | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | 1.00 | 1.25 | S21 | 11.32 | 13.87 | 16.41 | 1.10 | 1.38 | |
| 40101 | (S) CM/PROGRAM SPECIALIST | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.50 | 9.64 | 11.80 | 13.98 | 1.00 | 1.50 | S21 | 11.32 | 13.87 | 16.41 | 1.10 | 1.38 | |
| 40101.1 | (S) CM/PROGRAM SPECIALIST P/D | 13 | 8.27 | 11.35 | 13.44 | 1.00 | 1.50 | 9.64 | 11.80 | 13.98 | 1.00 | 1.50 | S21 | 11.32 | 13.87 | 16.41 | 1.10 | 1.38 | |
| 50039 | (S) COMMUNITY RELATIONS ASST P/D | 13 | 7.79 | 9.54 | 11.30 | 1.00 | 1.50 | 12.96 | 16.68 | 18.79 | 1.00 | 1.50 | S14 | 29.31 | 10.97 | 11.75 | 1.65 | 1.38 | Incumbent=1.5% increase |
| 50226 | (S) CONSUMER SERVICE REP | 25.01 | 12.46 | 15.26 | 18.07 | 1.00 | 1.50 | 15.04 | 18.42 | 21.81 | 1.00 | 1.50 | S31 | 14.48 | 17.74 | 21.00 | 1.65 | 1.65 | |
| 50227 | (S) CONSUMER SERVICE REP P/D | 25.01 | 12.48 | 15.26 | 18.07 | 1.00 | 1.50 | 10.39 | 12.72 | 15.06 | 1.00 | 1.50 | S31 | 10.51 | 12.88 | 15.24 | 1.10 | 1.65 | |
| 50238 | (S) DEPARTMENT TECHNICAL ASSIST | 16.01 | 9.99 | 12.23 | 14.48 | 1.00 | 1.50 | 10.39 | 12.72 | 15.06 | 1.00 | 1.50 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.65 | |
| 50286 | (S) DEPARTMENT TECHNICAL ASSIST P/D | 16.01 | 9.99 | 12.23 | 14.48 | 1.00 | 1.50 | 13.96 | 17.10 | 20.24 | 1.00 | 1.50 | S30 | 14.13 | 17.31 | 20.49 | 1.10 | 1.65 | |
| 40908 | (S) DERMATOLOGY ASSISTANT | 28 | 13.42 | 16.44 | 19.46 | 1.00 | 1.50 | 13.96 | 17.10 | 20.24 | 1.00 | 1.50 | S30 | 14.13 | 17.31 | 20.49 | 1.10 | 1.65 | |
| 40903 | (S) DEVELOPMENTAL SVCS AIDE | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.50 | 11.46 | 14.03 | 16.61 | 1.00 | 1.50 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 40941 | (S) DEVELOPMENTAL SVCS AIDE P/D | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.50 | 11.46 | 14.03 | 16.61 | 1.00 | 1.50 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 60209 | (S) DIET AIDE | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | 1.00 | 1.25 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | |
| 60209.1 | (S) DIET AIDE P/D | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | 1.00 | 1.25 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | |
| 12007 | (S) ENVIRONMENTAL CARE COORDINATOR (SURGICAL) | 29.03 | 13.76 | 16.85 | 19.95 | 1.00 | 2.00 | 14.31 | 17.52 | 20.75 | 1.00 | 2.00 | S51 | 15.21 | 18.63 | 22.05 | 1.10 | 2.20 | Incumbent=5% increase |
| 10269 | (S) EQUIPMENT SPECIALIST | 27.03 | 13.10 | 16.04 | 18.99 | 1.00 | 1.50 | 13.62 | 16.68 | 19.75 | 1.00 | 1.50 | S30 | 18.63 | 18.63 | 22.05 | 1.10 | 2.20 | Incumbent=5% increase |
| 10269.1 | (S) EQUIPMENT SPECIALIST P/D | 27.03 | 13.10 | 16.04 | 18.99 | 1.00 | 1.50 | 13.62 | 16.68 | 19.75 | 1.00 | 1.50 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 2.20 | Incumbent=5% increase |

EXHIBIT A

48

Page 1

SCHEDULE A1

| Job Code | Title | Current Range Grade | Min | Mid | Max | Shift Diff PM | Night | 4% Adjustment Min | Mid | Max | New Range Based on Market Grade | Min | Mid | Max | Shift Diff PM | Night | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 60404 | (S) EVS AIDE 1 P/D, CCH | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=5% increase |
| 60400 | (S) EVS AIDE 1, CCH | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=5% increase |
| 60034 | (S) EVS AIDE, LEAD, CCH | 11 | 8.82 | 10.80 | 12.79 | 1.00 | 1.25 | 9.17 | 11.23 | 13.30 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.38 | incumbent=5% increase |
| 60032 | (S) EVS AIDE, LEAD, CCH | 11 | 8.82 | 10.80 | 12.79 | 1.00 | 1.25 | 9.17 | 11.23 | 13.30 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.38 | incumbent=5% increase |
| 60032 | (S) EVS ATTENDANT | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60023 | (S) EVS ATTENDANT P/D | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60020 | (S) FSW | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60011 | (S) FSW P/D | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60013 | (S) FSW, LEAD | 16 | 9.99 | 12.23 | 14.48 | 1.00 | 1.25 | 10.38 | 12.72 | 15.06 | S24 | 12.19 | 14.94 | 17.68 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60200 | (S) FSW, SENIOR | 14 | 9.89 | 12.11 | 14.33 | 1.00 | 1.25 | 8.89 | 14.33 | 15.06 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | incumbent=7.5% increase |
| 60012 | (S) GROUNDSKEEPER | 23 | 11.29 | 13.83 | 16.37 | 1.00 | 1.50 | 11.74 | 14.38 | 17.02 | S25 | 12.49 | 15.11 | 17.24 | 1.10 | 1.65 | |
| 60102 | (S) GROUNDSKEEPER LEAD | 23 | 11.86 | 14.53 | 17.20 | 1.00 | 1.50 | 12.33 | 15.11 | 14.70 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.65 | |
| 52016 | (S) HEALTH INFORMATION SPECIALIST | 15.01 | 9.74 | 11.93 | 14.13 | 1.00 | 1.50 | 10.13 | 12.41 | 17.89 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 1.65 | |
| 52014 | (S) HEALTH INFORMATION SPECIALIST 11 | 23 | 11.86 | 14.53 | 17.20 | 1.00 | 1.50 | 12.33 | 15.11 | 17.89 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 1.65 | |
| 52019 | (S) HEALTH INFORMATION SPECIALIST P/D | 15.01 | 9.74 | 11.93 | 14.13 | 1.00 | 1.50 | 10.13 | 12.41 | 17.89 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 1.65 | |
| 52016 | (S) HEALTH INFORMATION SPECIALIST P/D | 23 | 11.86 | 14.53 | 17.20 | 1.00 | 1.50 | 12.33 | 15.11 | 17.89 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 1.65 | |
| 50411 | (S) HEALTH RECORD ANALYST | 23 | 11.86 | 14.53 | 17.20 | 1.00 | 1.50 | 12.33 | 15.11 | 17.89 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 1.65 | |
| 50412 | (S) HEALTH RECORD ANALYST P/D | 37 | 16.86 | 20.53 | 24.30 | 1.00 | 1.25 | 17.43 | 21.35 | 25.27 | S39 | 17.84 | 21.61 | 25.58 | 1.10 | 1.38 | |
| 51018 | (S) HELP DESK SPECIALIST P/D | 19 | 10.75 | 13.17 | 15.59 | 1.00 | 1.25 | 11.18 | 13.70 | 16.21 | S21 | 11.32 | 13.87 | 16.41 | 1.10 | 1.38 | |
| 90301 | (S) HOME CARE DELIVERY TECH | 19 | 10.75 | 13.17 | 15.59 | 1.00 | 1.25 | 11.18 | 13.70 | 16.21 | S21 | 11.32 | 13.87 | 16.41 | 1.10 | 1.38 | |
| 90300 | (S) HOME CARE DELIVERY TECH P/D | 1 | 6.89 | 8.44 | 9.99 | 1.00 | 1.25 | 7.17 | 8.78 | 10.39 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | |
| 60304 | (S) HOSPITAL SERVICES AIDE | 14 | 9.51 | 11.64 | 13.78 | 1.00 | 1.25 | 9.89 | 12.11 | 14.33 | S20 | 11.04 | 13.53 | 16.01 | 1.10 | 1.38 | |
| 60032 | (S) HOSPITAL SVCS AIDE P/D | 14 | 9.51 | 11.64 | 13.78 | 1.00 | 1.25 | 9.89 | 12.11 | 14.33 | S20 | 11.04 | 13.53 | 16.01 | 1.10 | 1.38 | |
| 60324 | (S) HOUSEKEEPING ATTENDANT, SENIOR | PDF 4 | | | | | | | | | PDF 4 | | | | | | |
| 60335 | (S) HOUSEKEEPING ATTENDANT, SENIOR P/D | | | | | | | | | | | | | | | | |
| 50000 | (S) HUMAN RESOURCES PER DIEM REP | 17.12 | 8.76 | 10.73 | 12.71 | 1.00 | 1.25 | 9.11 | 11.16 | 13.22 | S19.12 | 9.23 | 11.31 | 13.38 | 1.10 | 1.38 | |
| 90202 | (S) INPATIENT ASSISTANT (12) | 17.12 | 8.76 | 10.73 | 12.71 | 1.00 | 1.25 | 9.11 | 11.16 | 13.22 | S19.12 | 9.23 | 11.31 | 13.38 | 1.10 | 1.38 | |
| 90203 | (S) INPATIENT ASSISTANT (12) P/D | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | S18 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | |
| 90024 | (S) INPATIENT ASSISTANT (8) | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | S18 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | |
| 90025 | (S) INPATIENT ASSISTANT (8) P/D | 46.02 | 20.92 | 25.62 | 30.33 | 1.00 | 2.50 | 21.76 | 26.64 | 31.54 | S46 | 22.02 | 26.98 | 31.93 | 1.65 | 2.75 | |
| 10984 | (S) LEAD, HVAC/R TECHNICIAN | 37.05 | 20.92 | 25.62 | 30.33 | 1.00 | 2.50 | 21.76 | 26.64 | 31.54 | S46 | 22.02 | 26.98 | 31.93 | 1.27 | 2.20 | |
| 10983 | (S) LEAD, HVAC/R TECHNICIAN | 37.05 | 20.92 | 25.62 | 30.33 | 1.00 | 1.50 | 9.64 | 11.80 | 13.98 | S56 | 11.89 | 14.57 | 17.24 | 1.10 | 1.38 | |
| 40104 | (S) LEAD, PROGRAM COORDINATOR | 44 | 19.91 | 24.39 | 28.87 | 1.00 | 2.00 | 20.71 | 25.37 | 30.02 | S52 | 24.30 | 29.77 | 35.24 | 1.43 | 2.20 | |
| 60105 | (S) MAINTENANCE MECHANIC | 29.05 | 13.76 | 16.85 | 19.95 | 1.00 | 1.50 | 14.31 | 17.52 | 20.75 | S37 | 16.79 | 20.57 | 24.35 | 1.27 | 2.20 | |
| 60107 | (S) MAINTENANCE MECHANIC 11 | 33.05 | 15.19 | 18.60 | 22.02 | 1.00 | 1.15 | 15.80 | 19.34 | 22.90 | S41 | 18.53 | 22.70 | 26.87 | 1.27 | 2.20 | |
| 60100 | (S) MAINTENANCE MECHANIC | 21 | 11.29 | 13.83 | 16.37 | 1.00 | 1.50 | 11.74 | 14.38 | 17.02 | S25 | 12.80 | 15.68 | 18.56 | 1.10 | 1.43 | |
| 60100 | (S) MAINTENANCE TECH 1 | 24.03 | 12.16 | 14.88 | 17.63 | 1.00 | 1.30 | 12.65 | 14.88 | 17.46 | S24 | 12.19 | 14.94 | 17.68 | 1.10 | 1.38 | |
| 50022 | (S) MATERIEL MANAGEMENT ASSOC. | 19 | 11.58 | 14.18 | 16.78 | 1.00 | 1.50 | 12.04 | 14.75 | 17.46 | S24 | 12.19 | 14.94 | 17.68 | 1.10 | 1.38 | |
| 92020 | (S) MATERIEL SVCS OPERATOR | 16 | 9.99 | 12.23 | 14.48 | 1.00 | 1.30 | 10.39 | 12.72 | 15.06 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.38 | |
| 92021 | (S) MATERIEL SVCS OPERATOR P/D | 16 | 9.99 | 12.23 | 14.48 | 1.00 | 1.30 | 10.39 | 12.72 | 15.06 | S18 | 10.51 | 12.88 | 15.24 | 1.10 | 1.38 | |
| 40013 | (S) MEDICAL ASSISTANT | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.30 | 11.46 | 14.03 | 16.61 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 40014 | (S) MEDICAL ASSISTANT (P/D) | 20 | 11.02 | 13.49 | 15.97 | 1.00 | 1.30 | 11.46 | 14.03 | 16.61 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.38 | |
| 40015 | (S) MEDICAL ASSISTANT 11 | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.37 | 9.64 | 11.80 | 13.98 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 2.20 | incumbent=7.5% increase |
| 40030 | (S) MEDICAL ASSISTANT 11 P/D | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.37 | 9.64 | 11.80 | 13.98 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 2.20 | incumbent=7.5% increase |
| 40106 | (S) NURSING ACTIVITIES ASSISTANT | 14.12 | 8.15 | 9.98 | 11.81 | 1.00 | 1.36 | 8.48 | 10.38 | 12.28 | S16.12 | 8.57 | 10.50 | 12.43 | 1.10 | 1.38 | |
| 60106 | (S) PAINTER | 14.12 | 8.15 | 9.98 | 11.81 | 1.00 | 1.36 | 8.48 | 10.38 | 12.28 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.38 | |
| 60111 | (S) PAINTER, LEAD | 19.01 | 8.51 | 11.64 | 13.78 | 1.00 | 1.36 | 9.89 | 12.11 | 14.33 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.65 | |
| 10391 | (S) PARENT LIAISON | 19.01 | 10.75 | 13.17 | 15.59 | 1.00 | 1.50 | 11.18 | 13.70 | 16.21 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.65 | |
| 10389 | (S) PARENT LIAISON (12) | 31.03 | 12.39 | 15.18 | 17.97 | 1.00 | 2.00 | 12.89 | 15.79 | 18.69 | S33 | 15.96 | 15.90 | 18.89 | 1.43 | 2.20 | |
| 10385 | (S) PARENT LIAISON P/D | 31.03 | 14.46 | 17.71 | 20.87 | 1.00 | 2.00 | 15.04 | 18.42 | 21.81 | S33 | 18.63 | 18.63 | 22.05 | 1.43 | 2.20 | |
| 42014 | (S) PATIENT CARE ASSISTANT (12) | 14.12 | 8.15 | 9.98 | 11.81 | 1.00 | 1.36 | 8.48 | 10.38 | 12.28 | S33 | 15.21 | 18.63 | 22.05 | 1.43 | 2.20 | |
| 42013 | (S) PATIENT CARE ASSISTANT (12) P/D | 14.12 | 8.15 | 9.98 | 11.81 | 1.00 | 1.36 | 8.48 | 10.38 | 12.28 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.38 | |
| 42010 | (S) PATIENT CARE ASSISTANT (8) | 14 | 9.51 | 11.64 | 13.78 | 1.00 | 1.50 | 9.89 | 12.11 | 14.33 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.65 | |
| 42011 | (S) PATIENT CARE ASSISTANT (8) P/D | 19.01 | 10.75 | 13.17 | 15.59 | 1.00 | 1.50 | 11.18 | 13.70 | 16.21 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.65 | |
| 50821 | (S) PATIENT REP | 40.03 | 18.04 | 22.10 | 26.16 | 1.00 | 2.00 | 18.76 | 22.98 | 27.21 | S42 | 18.99 | 23.27 | 27.54 | 1.43 | 2.20 | incumbent=15% increase |
| 10589 | (S) PATIENT REP P/D | 40.03 | 18.04 | 22.10 | 26.16 | 1.00 | 2.00 | 18.76 | 22.98 | 27.21 | S42 | 18.99 | 23.27 | 27.54 | 1.43 | 2.20 | incumbent=15% increase |
| 10584 | (S) PC CUSTOMER SERVICE TECH | 40.03 | 20.41 | 25.00 | 29.59 | 1.00 | 2.00 | 21.23 | 26.00 | 30.77 | S47 | 21.44 | 26.26 | 31.15 | 1.10 | 2.20 | incumbent=5% increase |
| 10586 | (S) PC CUSTOMER SERVICE TECH P/D | 45 | 9.27 | 11.35 | 13.44 | 1.00 | 1.15 | 9.64 | 11.80 | 13.98 | S23 | 11.89 | 14.57 | 17.24 | 1.10 | 1.38 | incumbent=7.5% increase |
| 40013 | (S) PROGRAM ACTIVITY ASST | 13 | | | | | | | | | S23 | | | | | | |

SCHEDULE A1

| Job Code | Title | Current Range Grade | Min | Mid | Max | Shift Diff PM | Night | 4% Adjustment Min | Mid | Max | New Range Grade | Min | Mid | Max | 10% Sun Dot PM | Night | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10171 | (S) QMRP ASSISTANT | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | S25 | 12.49 | 15.30 | 18.11 | 1.10 | 1.38 | Incumbent=7.5% increase |
| 10170.1 | (S) QMRP ASSISTANT P/D | 17 | 10.23 | 12.53 | 14.83 | 1.00 | 1.25 | 10.64 | 13.03 | 15.42 | S25 | 12.49 | 15.30 | 18.11 | 1.10 | 1.38 | Incumbent=7.5% increase |
| 60204 | (S) RECEIVING ASSISTANT | 6.02 | 7.79 | 9.54 | 11.30 | 1.00 | 2.00 | 8.10 | 9.92 | 11.75 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 2.20 | Incumbent=7.5% increase |
| 40112 | (S) RECREATION THERAPY ASST | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.25 | 9.64 | 11.80 | 13.98 | S23 | 11.69 | 14.57 | 17.24 | 1.10 | 1.38 | Incumbent=7.5% increase |
| 51021 | (S) RELEASE OF INFORMATION SPEC | 19.01 | 10.75 | 13.17 | 15.59 | 1.00 | 1.50 | 11.18 | 13.70 | 16.21 | S22 | 11.60 | 14.21 | 16.82 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 40110 | (S) RESIDENTIAL CARE PROFESSIONAL | 10 | 8.61 | 10.54 | 12.48 | 1.00 | 1.25 | 8.95 | 10.96 | 12.98 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 40029 | (S) RESIDENTIAL CARE PROFESSIONAL P/D | 10 | 8.61 | 10.54 | 12.48 | 1.00 | 1.25 | 8.95 | 10.96 | 12.98 | S16 | 10.00 | 12.25 | 14.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 62008 | (S) SERVICE SUPPORT AIDE (8) | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 60029 | (S) SERVICE SUPPORT AIDE (8) P/D | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S14 | 10.00 | 11.25 | 12.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 62010 | (S) SERVICE SUPPORT AIDE (8) (R) | 10 | 8.61 | 10.54 | 12.48 | 1.00 | 1.25 | 8.95 | 10.96 | 12.98 | S16 | 10.00 | 11.25 | 14.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 62014 | (S) SERVICE SUPPORT AIDE II (8) (P/D) | 10 | 8.61 | 10.54 | 12.48 | 1.00 | 1.25 | 8.95 | 10.96 | 12.98 | S16 | 10.00 | 13.67 | 14.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 90304 | (S) SHUTTLE BUS DRIVER | 19 | 10.75 | 13.17 | 15.59 | 1.00 | 1.25 | 11.18 | 13.70 | 16.21 | S21 | 11.32 | 13.67 | 16.41 | 1.10 | 1.38 | Incumbent=5% increase |
| 90306 | (S) SHUTTLE BUS DRIVER P/D | 19 | 10.75 | 13.17 | 15.59 | 1.00 | 1.25 | 11.18 | 13.70 | 16.21 | S21 | 11.32 | 13.67 | 16.41 | 1.10 | 1.38 | Incumbent=5% increase |
| 11971 | (S) SR BUYER | 37.02 | 16.76 | 20.53 | 24.30 | 1.00 | 2.00 | 17.43 | 21.35 | 25.27 | S43 | 19.48 | 23.84 | 28.22 | 1.10 | 2.20 | Incumbent=5% increase |
| 10310 | (S) STERILE PROCESSING TECH I | 20.01 | 11.02 | 13.49 | 15.97 | 1.50 | 2.50 | 11.46 | 14.03 | 16.61 | S26 | 12.80 | 15.68 | 18.56 | 1.65 | 2.75 | Incumbent=5% increase |
| 10325 | (S) STERILE PROCESSING TECH I P/D | 20.01 | 11.02 | 13.49 | 15.97 | 1.50 | 2.50 | 11.46 | 14.03 | 16.61 | S26 | 12.80 | 15.68 | 18.56 | 1.65 | 2.75 | Incumbent=5% increase |
| 10312 | (S) STERILE PROCESSING TECH II | 24.01 | 12.16 | 14.89 | 17.63 | 1.50 | 2.50 | 12.65 | 15.49 | 18.34 | S30 | 14.13 | 17.31 | 20.49 | 1.65 | 2.75 | Incumbent=5% increase |
| 50003 | (S) SURGERY SCHEDULER (10) | 25.101 | 11.33 | 13.88 | 16.43 | 1.00 | 1.50 | 11.78 | 14.44 | 17.09 | S33.10 | 13.83 | 16.94 | 20.05 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 50004 | (S) SURGERY SCHEDULER (12) | 25.121 | 10.68 | 13.08 | 15.48 | 1.00 | 1.50 | 11.11 | 13.60 | 16.10 | S33.12 | 13.00 | 15.96 | 18.89 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 50002 | (S) SURGERY SCHEDULER (8) | 25.01 | 12.46 | 15.26 | 18.07 | 1.00 | 1.50 | 12.96 | 15.87 | 18.79 | S33 | 14.57 | 16.07 | 22.05 | 1.10 | 1.65 | Incumbent=7.5% increase |
| 40036 | (S) SURGICAL SERVICES AIDE (12) | 8.12 | 7.02 | 8.59 | 10.17 | 1.00 | 1.25 | 7.30 | 8.93 | 10.58 | S15.12 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 40035 | (S) SURGICAL SERVICES AIDE (9) | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 40034 | (S) SURGICAL SERVICES AIDE (8) | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 40036 | (S) SURGICAL SERVICES AIDE (8) P/D | 8 | 8.19 | 10.03 | 11.87 | 1.00 | 1.25 | 8.52 | 10.43 | 12.34 | S15 | 10.00 | 11.75 | 13.50 | 1.10 | 1.38 | Incumbent=5% increase |
| 50409 | (S) TRANSCRIPTIONIST | 25.01 | 12.46 | 15.26 | 18.07 | 1.00 | 1.50 | 12.96 | 15.87 | 18.79 | S31 | 14.48 | 17.74 | 21.00 | 1.10 | 1.65 | Incumbent=5% increase |
| 50408 | (S) TRANSCRIPTIONIST P/D | 25.01 | 12.46 | 15.26 | 18.07 | 1.00 | 1.50 | 12.96 | 15.87 | 18.79 | S31 | 14.48 | 17.74 | 21.00 | 1.10 | 1.65 | Incumbent=5% increase |
| 90003 | (S) TEENAGE/RESOURCE SPEC P/D | 27 | 13.10 | 16.04 | 18.99 | 1.00 | 1.25 | 13.62 | 16.68 | 19.75 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.38 | Incumbent=5% increase |
| 90005 | (S) TRANSLATOR/RESOURCE SPECIALIST | 27 | 13.10 | 16.04 | 18.99 | 1.00 | 1.25 | 13.62 | 16.68 | 19.75 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.38 | Incumbent=5% increase |
| 90005 | (S) TRANSLATOR/RESOURCE SPECIALIST (ALT) | 27 | 13.10 | 16.04 | 18.99 | 1.00 | 1.25 | 13.62 | 16.68 | 19.75 | S33 | 15.21 | 18.63 | 22.05 | 1.10 | 1.38 | Incumbent=5% increase |
| 90010 | (S) TRANSPORT AIDE | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.25 | 9.64 | 11.80 | 13.98 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | Incumbent=5% increase |
| 40022 | (S) TRANSPORT AIDE P/D | 13 | 9.27 | 11.35 | 13.44 | 1.00 | 1.25 | 9.64 | 11.80 | 13.98 | S19 | 10.77 | 13.20 | 15.62 | 1.10 | 1.38 | Incumbent=5% increase |
| 92018 | (S) WAREHOUSE COORDINATOR | 24.04 | 12.16 | 14.89 | 17.63 | 1.00 | 2.00 | 12.65 | 15.49 | 18.34 | S26 | 12.80 | 15.68 | 18.56 | 1.10 | 2.20 | Incumbent=5% increase |

**EXHIBIT A**

50

**SCHEDULE A2**
**4% RANGE ADJUSTMENT**
**JULY 2007**

| Job Code | Title | Grade | Min | Mid | Max |
|---|---|---|---|---|---|
| | | July 2007 Range | | | |
| 50202 | (S) ADMIN ASSOC (SKILL B) | S33 | 15.82 | 19.38 | 22.93 |
| 50205 | (S) ADMIN ASSOC (SKILL B) P/D | S33 | 15.82 | 19.38 | 22.93 |
| 50203 | (S) ADMIN ASSOC (SKILL B*) | S39 | 18.35 | 22.47 | 26.60 |
| 50203.1 | (S) ADMIN ASSOC (SKILL B*) (10 HR) ALT | S39 | 18.35 | 22.47 | 26.60 |
| 50201 | (S) ADMIN ASSOC (SKILL C) | S19 | 11.20 | 13.72 | 16.24 |
| 50201.12 | (S) ADMIN ASSOC (SKILL C) (12) | S19.12 | 9.60 | 11.75 | 13.92 |
| 50204 | (S) ADMIN ASSOC (SKILL C) P/D | S19 | 11.20 | 13.72 | 16.24 |
| 50204.12 | (S) ADMIN ASSOC (SKILL C) P/D (12) | S19.12 | 9.60 | 11.75 | 13.92 |
| 60305 | (S) A-V & SET-UP ASSISTANT | S19 | 11.20 | 13.72 | 16.24 |
| 90258 | (S) BEHAVIORAL TREATMENT TECHNICIAN | S31 | 15.06 | 18.45 | 21.84 |
| 10978 | (S) BIO MED TECH I | S45 | 21.27 | 26.05 | 30.84 |
| 10977 | (S) BIO MED TECH I P/D | S45 | 21.27 | 26.05 | 30.84 |
| 10979 | (S) BIO MED TECH II | S48 | 22.90 | 28.05 | 33.21 |
| 10980 | (S) BIO MED TECH III | S52 | 25.27 | 30.96 | 36.65 |
| 60113 | (S) BLDG MAINT TECH, LEAD | S42 | 19.75 | 24.19 | 28.64 |
| 60103 | (S) BLDG MAINTENANCE TECH | S33 | 15.82 | 19.38 | 22.93 |
| 52002 | (S) BUSINESS ASSOC 1A (12) | S24.12 | 10.87 | 13.31 | 15.76 |
| 52004 | (S) BUSINESS ASSOC 1A (12) P/D | S24.12 | 10.87 | 13.31 | 15.76 |
| 52000 | (S) BUSINESS ASSOC 1A (8) | S24 | 12.68 | 15.53 | 18.39 |
| 52003 | (S) BUSINESS ASSOC 1A (8) P/D | S24 | 12.68 | 15.53 | 18.39 |
| 52001 | (S) BUSINESS ASSOC IA (10) ALT | S24 | 12.68 | 15.53 | 18.39 |
| 52005 | (S) BUSINESS ASSOC IB (8) | S28 | 13.99 | 17.13 | 20.28 |
| 12010.1 | (S) BUSINESS ASSOC IIA (10) ALT | S33 | 15.82 | 19.38 | 22.93 |
| 12010 | (S) BUSINESS ASSOC IIA (8) | S33 | 15.82 | 19.38 | 22.93 |
| 50223 | (S) BUYER | S39 | 18.35 | 22.47 | 26.60 |
| 40026 | (S) CASE AIDE | S14 | 10.00 | 11.50 | 13.00 |
| 40027 | (S) CASE AIDE P/D | S14 | 10.00 | 11.50 | 13.00 |
| 60210 | (S) CATERING COORDINATOR | S22 | 12.06 | 14.78 | 17.49 |
| 40024 | (S) CHILD ENRICHMENT AIDE | S14 | 10.00 | 11.50 | 13.00 |
| 40025 | (S) CHILD ENRICHMENT AIDE P/D | S14 | 10.00 | 11.50 | 13.00 |
| 50070 | (S) CLERK P/D | S14 | 10.00 | 11.50 | 13.00 |
| 40900 | (S) CLINICAL ASSIST (LEV 1) | S22 | 12.06 | 14.78 | 17.49 |
| 40900.2 | (S) CLINICAL ASSIST (LEV 1) ALT | S22 | 12.06 | 14.78 | 17.49 |
| 40920 | (S) CLINICAL ASSIST (LEV 1) P/D | S22 | 12.06 | 14.78 | 17.49 |
| 40910 | (S) CLINICAL ASSIST (LEV 2) | S26 | 13.31 | 16.31 | 19.30 |
| 40930 | (S) CLINICAL ASSIST (LEV 2) P/D | S26 | 13.31 | 16.31 | 19.30 |
| 32000 | (S) CLINICAL ASSIST II (8) | S32 | 15.43 | 18.91 | 22.38 |
| 40018 | (S) CLINICAL CARE ASSISTANT | S18 | 10.93 | 13.38 | 15.85 |
| 50138 | (S) CLINICAL TRANSPLANT ASSOCIATE | S36 | 17.04 | 20.86 | 24.70 |
| 40105 | (S) CNA/PROGRAM SPEC. PRECEPTOR | S25 | 12.99 | 15.91 | 18.83 |
| 40101 | (S) CNA/PROGRAM SPECIALIST | S21 | 11.77 | 14.41 | 17.07 |
| 40101.1 | (S) CNA/PROGRAM SPECIALIST P/D | S21 | 11.77 | 14.41 | 17.07 |
| 50038 | (S) COMMUNITY RELATIONS ASST P/D | S14 | 10.00 | 11.50 | 13.00 |
| 50226 | (S) CONSUMER SERVICE REP | S31 | 15.06 | 18.45 | 21.84 |
| 50227 | (S) CONSUMER SERVICE REP P/D | S31 | 15.06 | 18.45 | 21.84 |
| 60217 | (S) COOK | S22 | 12.06 | 14.78 | 17.49 |
| 60218 | (S) COOK P/D | S22 | 12.06 | 14.78 | 17.49 |
| 50028 | (S) CUSTOMER SERVICE REP | S24 | 12.68 | 15.53 | 18.39 |
| 50028.1 | (S) CUSTOMER SERVICE REP P/D | S24 | 12.68 | 15.53 | 18.39 |
| 50602 | (S) DATA SPECIALIST | S19 | 11.20 | 13.72 | 16.24 |
| 50026 | (S) DATA SUPPORT SPECIALIST | S30 | 14.70 | 18.00 | 21.31 |
| 50042 | (S) DATA SUPPORT SPECIALIST, LEAD | S34 | 16.21 | 19.86 | 23.51 |

**SCHEDULE A2**
**4% RANGE ADJUSTMENT**
**JULY 2007**

| Job Code | Title | Grade | July 2007 Range | | |
|---|---|---|---|---|---|
| | | | Min | Mid | Max |
| 50285 | (S) DEPARTMENT TECHNICAL ASSIST | S18 | 10.93 | 13.38 | 15.85 |
| 50286 | (S) DEPARTMENT TECHNICAL ASSIST P/D | S18 | 10.93 | 13.38 | 15.85 |
| 40038 | (S) DERMATOLOGY ASSISTANT | S30 | 14.70 | 18.00 | 21.31 |
| 40940 | (S) DEVELOPMENTAL SVCS AIDE | S22 | 12.06 | 14.78 | 17.49 |
| 40941 | (S) DEVELOPMENTAL SVCS AIDE P/D | S22 | 12.06 | 14.78 | 17.49 |
| 60209 | (S) DIET AIDE | S19 | 11.20 | 13.72 | 16.24 |
| 60209.1 | (S) DIET AIDE P/D | S19 | 11.20 | 13.72 | 16.24 |
| 12007 | (S) ENVIRONMENTAL CARE COORDINATOR (SURGICAL SVCS) | S31 | 15.06 | 18.45 | 21.84 |
| 10269 | (S) EQUIPMENT SPECIALIST | S33 | 15.82 | 19.38 | 22.93 |
| 10269.1 | (S) EQUIPMENT SPECIALIST P/D | S33 | 15.82 | 19.38 | 22.93 |
| 60404 | (S) EVS AIDE I P/D, CCH | S15 | 10.00 | 12.02 | 14.04 |
| 60400 | (S) EVS AIDE I, CCH | S15 | 10.00 | 12.02 | 14.04 |
| 60304 | (S) EVS AIDE, LEAD | S18 | 10.93 | 13.38 | 15.85 |
| 60402 | (S) EVS AIDE, LEAD CCH | S18 | 10.93 | 13.38 | 15.85 |
| 60322 | (S) EVS ATTENDANT | S15 | 10.00 | 12.02 | 14.04 |
| 60323 | (S) EVS ATTENDANT P/D | S15 | 10.00 | 12.02 | 14.04 |
| 60203 | (S) FSW | S16 | 10.40 | 12.74 | 15.08 |
| 60211 | (S) FSW P/D | S16 | 10.40 | 12.74 | 15.08 |
| 60213 | (S) FSW, LEAD | S24 | 12.68 | 15.53 | 18.39 |
| 60200 | (S) FSW, SENIOR | S22 | 12.06 | 14.78 | 17.49 |
| 60102 | (S) GROUNDSKEEPER | S23 | 12.37 | 15.14 | 17.93 |
| 60109 | (S) GROUNDSKEEPER, LEAD | S25 | 12.99 | 15.91 | 18.83 |
| 52015 | (S) HEALTH INFORMATION SPECIALIST | S18 | 10.93 | 13.38 | 15.85 |
| 52014 | (S) HEALTH INFORMATION SPECIALIST II | S26 | 13.31 | 16.31 | 19.30 |
| 52019 | (S) HEALTH INFORMATION SPECIALIST II P/D | S26 | 13.31 | 16.31 | 19.30 |
| 52016 | (S) HEALTH INFORMATION SPECIALIST P/D | S18 | 10.93 | 13.38 | 15.85 |
| 50411 | (S) HEALTH RECORD ANALYST | S26 | 13.31 | 16.31 | 19.30 |
| 50412 | (S) HEALTH RECORD ANALYST P/D | S26 | 13.31 | 16.31 | 19.30 |
| 51018 | (S) HELP DESK SPECIALIST SR | S39 | 18.35 | 22.47 | 26.60 |
| 10587 | (S) HELP DESK, LEAD | S47 | 22.30 | 27.31 | 32.33 |
| 90301 | (S) HOME CARE DELIVERY TECH | S21 | 11.77 | 14.41 | 17.07 |
| 90302 | (S) HOME CARE DELIVERY TECH P/D | S21 | 11.77 | 14.41 | 17.07 |
| 60324 | (S) HOUSEKEEPING ATTENDANT, SENIOR | S20 | 11.48 | 14.06 | 16.65 |
| 60325 | (S) HOUSEKEEPING ATTENDANT, SENIOR P/D | S20 | 11.48 | 14.06 | 16.65 |
| 50000 | (S) HUMAN RESOURCES PER DIEM REP | PDF.4 | | | |
| 92022 | (S) INPATIENT ASSISTANT (12) | S19.12 | 9.60 | 11.75 | 13.92 |
| 92023 | (S) INPATIENT ASSISTANT (12) P/D | S19.12 | 9.60 | 11.75 | 13.92 |
| 92024 | (S) INPATIENT ASSISTANT (8) | S19 | 11.20 | 13.72 | 16.24 |
| 92025 | (S) INPATIENT ASSISTANT (8) P/D | S19 | 11.20 | 13.72 | 16.24 |
| 50044 | (S) JR BUYER | S31 | 15.06 | 18.45 | 21.84 |
| 10984 | (S) LEAD, HVAC&R TECHNICIAN | S48 | 22.90 | 28.05 | 33.21 |
| 10983 | (S) LEAD, MECHANIC | S48 | 22.90 | 28.05 | 33.21 |
| 40104 | (S) LEAD, PROGRAM SPECIALIST | S23 | 12.37 | 15.14 | 17.93 |
| 60105 | (S) MAINTENANCE COORDINATOR | S52 | 25.27 | 30.96 | 36.65 |
| 60152 | (S) MAINTENANCE MECHANIC II | S37 | 17.46 | 21.39 | 25.32 |
| 60107 | (S) MAINTENANCE MECHANIC III | S41 | 19.27 | 23.61 | 27.94 |
| 60100 | (S) MAINTENANCE TECH I | S27 | 13.64 | 16.71 | 19.78 |
| 50222 | (S) MATERIEL MANAGEMENT ASSOC. | S26 | 13.31 | 16.31 | 19.30 |
| 92020 | (S) MATERIEL SERVICES OPERATOR | S24 | 12.68 | 15.53 | 18.39 |
| 92021 | (S) MATERIEL SVCS OPERATOR P/D | S24 | 12.68 | 15.53 | 18.39 |
| 40013 | (S) MEDICAL ASSISTANT I | S18 | 10.93 | 13.38 | 15.85 |
| 40037 | (S) MEDICAL ASSISTANT I (P/D) | S18 | 10.93 | 13.38 | 15.85 |

**SCHEDULE A2**
**4% RANGE ADJUSTMENT**
**JULY 2007**

| Job Code | Title | Grade | July 2007 Range Min | Mid | Max |
|---|---|---|---|---|---|
| 40015 | (S) MEDICAL ASSISTANT II | S22 | 12.06 | 14.78 | 17.49 |
| 40030 | (S) MEDICAL ASSISTANT II P/D | S22 | 12.06 | 14.78 | 17.49 |
| 40106 | (S) NURSING ACTIVITIES ASSISTANT | S23 | 12.37 | 15.14 | 17.93 |
| 60106 | (S) PAINTER | S33 | 15.82 | 19.38 | 22.93 |
| 60111 | (S) PAINTER, LEAD | S35 | 16.62 | 20.35 | 24.10 |
| 10381 | (S) PARENT LIAISON | S33 | 15.82 | 19.38 | 22.93 |
| 10386 | (S) PARENT LIASON (12) | S33.12 | 13.55 | 16.60 | 19.65 |
| 10383 | (S) PARENT LIASON P/D | S33 | 15.82 | 19.38 | 22.93 |
| 42012 | (S) PATIENT CARE ASSISTANT (12) | S16.12 | 8.91 | 10.92 | 12.93 |
| 42013 | (S) PATIENT CARE ASSISTANT (12) P/D | S16.12 | 8.91 | 10.92 | 12.93 |
| 42010 | (S) PATIENT CARE ASSISTANT (8) | S16 | 10.40 | 12.74 | 15.08 |
| 42011 | (S) PATIENT CARE ASSISTANT (8) P/D | S16 | 10.40 | 12.74 | 15.08 |
| 50621 | (S) PATIENT REP | S22 | 12.06 | 14.78 | 17.49 |
| 50619 | (S) PATIENT REP P/D | S22 | 12.06 | 14.78 | 17.49 |
| 10585 | (S) PC CUSTOMER SERVICE TECH | S42 | 19.75 | 24.19 | 28.64 |
| 10584 | (S) PC CUSTOMER SERVICE TECH P/D | S42 | 19.75 | 24.19 | 28.64 |
| 10586 | (S) PC CUSTOMER SERVICE TECH, SR | S47 | 22.34 | 27.36 | 32.40 |
| 40103 | (S) PROGRAM ACTIVITY ASST | S23 | 12.37 | 15.14 | 17.93 |
| 10171 | (S) QMRP ASSISTANT | S25 | 12.99 | 15.91 | 18.83 |
| 10170.1 | (S) QMRP ASSISTANT P/D | S25 | 12.99 | 15.91 | 18.83 |
| 60204 | (S) RECEIVING ASSISTANT | S15 | 10.00 | 12.02 | 14.04 |
| 40112 | (S) RECREATION THERAPY ASST | S23 | 12.37 | 15.14 | 17.93 |
| 51021 | (S) RELEASE OF INFORMATION SPEC | S22 | 12.06 | 14.78 | 17.49 |
| 40110 | (S) RESIDENTIAL CARE PROFESSIONAL | S16 | 10.40 | 12.74 | 15.08 |
| 40029 | (S) RESIDENTIAL CARE PROFESSIONAL P/D | S16 | 10.40 | 12.74 | 15.08 |
| 90305 | (S) SHUTTLE BUS DRIVER | S21 | 11.77 | 14.41 | 17.07 |
| 90304 | (S) SHUTTLE BUS DRIVER P/D | S21 | 11.77 | 14.41 | 17.07 |
| 10971 | (S) SR BUYER | S43 | 20.24 | 24.79 | 29.35 |
| 10310 | (S) STERILE PROCESSING TECH I | S26 | 13.31 | 16.31 | 19.30 |
| 10325 | (S) STERILE PROCESSING TECH I P/D | S26 | 13.31 | 16.31 | 19.30 |
| 10312 | (S) STERILE PROCESSING TECH II | S30 | 14.70 | 18.00 | 21.31 |
| 50303 | (S) SURGERY SCHEDULER (10) | S33.10 | 14.38 | 17.62 | 20.85 |
| 50304 | (S) SURGERY SCHEDULER (12) | S33.12 | 13.55 | 16.60 | 19.65 |
| 50302 | (S) SURGERY SCHEDULER (8) | S33 | 15.82 | 19.38 | 22.93 |
| 40035 | (S) SURGICAL SERVICES AIDE (12) | S15.12 | 8.57 | 10.30 | 12.03 |
| 40034 | (S) SURGICAL SERVICES AIDE (8) | S15 | 10.00 | 12.02 | 14.04 |
| 40036 | (S) SURGICAL SERVICES AIDE (8) P/D | S15 | 10.00 | 12.02 | 14.04 |
| 50409 | (S) TRANSCRIPTIONIST | S31 | 15.06 | 18.45 | 21.84 |
| 50430 | (S) TRANSCRIPTIONIST P/D | S31 | 15.06 | 18.45 | 21.84 |
| 90004 | (S) TRANSLATOR/RESOURCE SPEC P/D | S33 | 15.82 | 19.38 | 22.93 |
| 90005 | (S) TRANSLATOR/RESOURCE SPECIALIST | S33 | 15.82 | 19.38 | 22.93 |
| 90019 | (S) TRANSLATOR/RESOURCE SPECIALIST (ALT) | S33 | 15.82 | 19.38 | 22.93 |
| 40022 | (S) TRANSPORT AIDE | S19 | 11.20 | 13.72 | 16.24 |
| 40022.1 | (S) TRANSPORT AIDE P/D | S19 | 11.20 | 13.72 | 16.24 |
| 92018 | (S) WAREHOUSE COORDINATOR | S26 | 13.31 | 16.31 | 19.30 |

EXHIBIT A
53

## SCHEDULE A3
### 10 or 12-hour Shift Rate to 8-hour Shift Rate

| Job Code | Title | 10-hr/12-hr Range | | | | New 8-hour Range | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Grade | Min | Mid | Max | Grade | Min | Mid | Max |
| 50201.12 | (S) ADMIN ASSOC (SKILL C) (12) | S19.12 | 9.60 | 11.75 | 13.92 | S19 | 11.20 | 13.72 | 16.24 |
| 50204.12 | (S) ADMIN ASSOC (SKILL C) P/D (12) | S19.12 | 9.60 | 11.75 | 13.92 | S19 | 11.20 | 13.72 | 16.24 |
| 52002 | (S) BUSINESS ASSOC 1A (12) | S24.12 | 10.87 | 13.31 | 15.76 | S24 | 12.68 | 15.53 | 18.39 |
| 52004 | (S) BUSINESS ASSOC 1A (12) P/D | S24.12 | 10.87 | 13.31 | 15.76 | S24 | 12.68 | 15.53 | 18.39 |
| 92022 | (S) INPATIENT ASSISTANT (12) | S19.12 | 9.60 | 11.75 | 13.92 | S19 | 11.20 | 13.72 | 16.24 |
| 92023 | (S) INPATIENT ASSISTANT (12) P/D | S19.12 | 9.60 | 11.75 | 13.92 | S19 | 11.20 | 13.72 | 16.24 |
| 10386 | (S) PARENT LIASON (12) | S33.12 | 13.55 | 16.60 | 19.65 | S33 | 15.82 | 19.38 | 22.93 |
| 42012 | (S) PATIENT CARE ASSISTANT (12) | S16.12 | 8.91 | 10.92 | 12.93 | S16 | 10.40 | 12.74 | 15.08 |
| 42013 | (S) PATIENT CARE ASSISTANT (12) P/D | S16.12 | 8.91 | 10.92 | 12.93 | S16 | 10.40 | 12.74 | 15.08 |
| 50303 | (S) SURGERY SCHEDULER (10) | S33.10 | 14.38 | 17.62 | 20.85 | S33 | 15.82 | 19.38 | 22.93 |
| 50304 | (S) SURGERY SCHEDULER (12) | S33.12 | 13.55 | 16.60 | 19.65 | S33 | 15.82 | 19.38 | 22.93 |
| 40035 | (S) SURGICAL SERVICES AIDE (12) | S15.12 | 8.57 | 10.30 | 12.03 | S15 | 10.00 | 12.02 | 14.04 |

EXHIBIT A
54

## SCHEDULE A4
## 4% RANGE ADJUSTMENT
## JULY 2008

| Job Code | Title | Grade | July 2008 Range Min | Mid | Max |
|---|---|---|---|---|---|
| 50202 | (S) ADMIN ASSOC (SKILL B) | S33 | 16.45 | 20.16 | 23.85 |
| 50205 | (S) ADMIN ASSOC (SKILL B) P/D | S33 | 16.45 | 20.16 | 23.85 |
| 50203 | (S) ADMIN ASSOC (SKILL B*) | S39 | 19.08 | 23.37 | 27.66 |
| 50203.1 | (S) ADMIN ASSOC (SKILL B*) (10 HR) ALT | S39 | 19.08 | 23.37 | 27.66 |
| 50201 | (S) ADMIN ASSOC (SKILL C) | S19 | 11.65 | 14.27 | 16.89 |
| 50201.12 | (S) ADMIN ASSOC (SKILL C) (12) | S19 | 11.65 | 14.27 | 16.89 |
| 50204 | (S) ADMIN ASSOC (SKILL C) P/D | S19 | 11.65 | 14.27 | 16.89 |
| 50204.12 | (S) ADMIN ASSOC (SKILL C) P/D (12) | S19 | 11.65 | 14.27 | 16.89 |
| 60305 | (S) A-V & SET-UP ASSISTANT | S19 | 11.65 | 14.27 | 16.89 |
| 90258 | (S) BEHAVIORAL TREATMENT TECHNICIAN | S31 | 15.66 | 19.19 | 22.71 |
| 10978 | (S) BIO MED TECH I | S45 | 22.12 | 27.09 | 32.07 |
| 10977 | (S) BIO MED TECH I P/D | S45 | 22.12 | 27.09 | 32.07 |
| 10979 | (S) BIO MED TECH II | S48 | 23.82 | 29.17 | 34.54 |
| 10980 | (S) BIO MED TECH III | S52 | 26.28 | 32.20 | 38.12 |
| 60113 | (S) BLDG MAINT TECH, LEAD | S42 | 20.54 | 25.16 | 29.79 |
| 60103 | (S) BLDG MAINTENANCE TECH | S33 | 16.45 | 20.16 | 23.85 |
| 52002 | (S) BUSINESS ASSOC 1A (12) | S24 | 13.19 | 16.15 | 19.13 |
| 52004 | (S) BUSINESS ASSOC 1A (12) P/D | S24 | 13.19 | 16.15 | 19.13 |
| 52000 | (S) BUSINESS ASSOC 1A (8) | S24 | 13.19 | 16.15 | 19.13 |
| 52003 | (S) BUSINESS ASSOC 1A (8) P/D | S24 | 13.19 | 16.15 | 19.13 |
| 52001 | (S) BUSINESS ASSOC IA (10) ALT | S24 | 13.19 | 16.15 | 19.13 |
| 52005 | (S) BUSINESS ASSOC IB (8) | S28 | 14.55 | 17.82 | 21.09 |
| 12010.1 | (S) BUSINESS ASSOC IIA (10) ALT | S33 | 16.45 | 20.16 | 23.85 |
| 12010 | (S) BUSINESS ASSOC IIA (8) | S33 | 16.45 | 20.16 | 23.85 |
| 50223 | (S) BUYER | S39 | 19.08 | 23.37 | 27.66 |
| 40026 | (S) CASE AIDE | S14 | 10.00 | 11.76 | 13.52 |
| 40027 | (S) CASE AIDE P/D | S14 | 10.00 | 11.76 | 13.52 |
| 60210 | (S) CATERING COORDINATOR | S22 | 12.54 | 15.37 | 18.19 |
| 40024 | (S) CHILD ENRICHMENT AIDE | S14 | 10.00 | 11.76 | 13.52 |
| 40025 | (S) CHILD ENRICHMENT AIDE P/D | S14 | 10.00 | 11.76 | 13.52 |
| 50070 | (S) CLERK P/D | S14 | 10.00 | 11.76 | 13.52 |
| 40900 | (S) CLINICAL ASSIST (LEV 1) | S22 | 12.54 | 15.37 | 18.19 |
| 40900.2 | (S) CLINICAL ASSIST (LEV 1) ALT | S22 | 12.54 | 15.37 | 18.19 |
| 40920 | (S) CLINICAL ASSIST (LEV 1) P/D | S22 | 12.54 | 15.37 | 18.19 |
| 40910 | (S) CLINICAL ASSIST (LEV 2) | S26 | 13.84 | 16.96 | 20.07 |
| 40930 | (S) CLINICAL ASSIST (LEV 2) P/D | S26 | 13.84 | 16.96 | 20.07 |
| 32000 | (S) CLINICAL ASSIST II (8) | S32 | 16.05 | 19.67 | 23.28 |
| 40018 | (S) CLINICAL CARE ASSISTANT | S18 | 11.37 | 13.92 | 16.48 |
| 50138 | (S) CLINICAL TRANSPLANT ASSOCIATE | S36 | 17.72 | 21.69 | 25.69 |
| 40105 | (S) CNA/PROGRAM SPEC. PRECEPTOR | S25 | 13.51 | 16.55 | 19.58 |
| 40101 | (S) CNA/PROGRAM SPECIALIST | S21 | 12.24 | 14.99 | 17.75 |
| 40101.1 | (S) CNA/PROGRAM SPECIALIST P/D | S21 | 12.24 | 14.99 | 17.75 |
| 50038 | (S) COMMUNITY RELATIONS ASST P/D | S14 | 10.00 | 11.76 | 13.52 |
| 50226 | (S) CONSUMER SERVICE REP | S31 | 15.66 | 19.19 | 22.71 |
| 50227 | (S) CONSUMER SERVICE REP P/D | S31 | 15.66 | 19.19 | 22.71 |
| 60217 | (S) COOK | S22 | 12.54 | 15.37 | 18.19 |
| 60218 | (S) COOK P/D | S22 | 12.54 | 15.37 | 18.19 |
| 50028 | (S) CUSTOMER SERVICE REP | S24 | 13.19 | 16.15 | 19.13 |
| 50028.1 | (S) CUSTOMER SERVICE REP P/D | S24 | 13.19 | 16.15 | 19.13 |
| 50602 | (S) DATA SPECIALIST | S19 | 11.65 | 14.27 | 16.89 |
| 50026 | (S) DATA SUPPORT SPECIALIST | S30 | 15.29 | 18.72 | 22.16 |
| 50042 | (S) DATA SUPPORT SPECIALIST, LEAD | S34 | 16.86 | 20.65 | 24.45 |

## SCHEDULE A4
## 4% RANGE ADJUSTMENT
## JULY 2008

| Job Code | Title | Grade | Min | Mid | Max |
|---|---|---|---|---|---|
| | | | July 2008 Range | | |
| 50285 | (S) DEPARTMENT TECHNICAL ASSIST | S18 | 11.37 | 13.92 | 16.48 |
| 50286 | (S) DEPARTMENT TECHNICAL ASSIST P/D | S18 | 11.37 | 13.92 | 16.48 |
| 40038 | (S) DERMATOLOGY ASSISTANT | S30 | 15.29 | 18.72 | 22.16 |
| 40940 | (S) DEVELOPMENTAL SVCS AIDE | S22 | 12.54 | 15.37 | 18.19 |
| 40941 | (S) DEVELOPMENTAL SVCS AIDE P/D | S22 | 12.54 | 15.37 | 18.19 |
| 60209 | (S) DIET AIDE | S19 | 11.65 | 14.27 | 16.89 |
| 60209.1 | (S) DIET AIDE P/D | S19 | 11.65 | 14.27 | 16.89 |
| 12007 | (S) ENVIRONMENTAL CARE COORDINATOR (SURGICAL SVCS) | S31 | 15.66 | 19.19 | 22.71 |
| 10269 | (S) EQUIPMENT SPECIALIST | S33 | 16.45 | 20.16 | 23.85 |
| 10269.1 | (S) EQUIPMENT SPECIALIST P/D | S33 | 16.45 | 20.16 | 23.85 |
| 60404 | (S) EVS AIDE I P/D, CCH | S15 | 10.40 | 12.50 | 14.60 |
| 60400 | (S) EVS AIDE I, CCH | S15 | 10.40 | 12.50 | 14.60 |
| 60304 | (S) EVS AIDE, LEAD | S18 | 11.37 | 13.92 | 16.48 |
| 60402 | (S) EVS AIDE, LEAD CCH | S18 | 11.37 | 13.92 | 16.48 |
| 60322 | (S) EVS ATTENDANT | S15 | 10.40 | 12.50 | 14.60 |
| 60323 | (S) EVS ATTENDANT P/D | S15 | 10.40 | 12.50 | 14.60 |
| 60203 | (S) FSW | S16 | 10.82 | 13.25 | 15.68 |
| 60211 | (S) FSW P/D | S16 | 10.82 | 13.25 | 15.68 |
| 60213 | (S) FSW, LEAD | S24 | 13.19 | 16.15 | 19.13 |
| 60200 | (S) FSW, SENIOR | S22 | 12.54 | 15.37 | 18.19 |
| 60102 | (S) GROUNDSKEEPER | S23 | 12.86 | 15.75 | 18.65 |
| 60109 | (S) GROUNDSKEEPER, LEAD | S25 | 13.51 | 16.55 | 19.58 |
| 52015 | (S) HEALTH INFORMATION SPECIALIST | S18 | 11.37 | 13.92 | 16.48 |
| 52014 | (S) HEALTH INFORMATION SPECIALIST II | S26 | 13.84 | 16.96 | 20.07 |
| 52019 | (S) HEALTH INFORMATION SPECIALIST II P/D | S26 | 13.84 | 16.96 | 20.07 |
| 52016 | (S) HEALTH INFORMATION SPECIALIST P/D | S18 | 11.37 | 13.92 | 16.48 |
| 50411 | (S) HEALTH RECORD ANALYST | S26 | 13.84 | 16.96 | 20.07 |
| 50412 | (S) HEALTH RECORD ANALYST P/D | S26 | 13.84 | 16.96 | 20.07 |
| 51018 | (S) HELP DESK SPECIALIST SR | S39 | 19.08 | 23.37 | 27.66 |
| 10587 | (S) HELP DESK, LEAD | S47 | 23.19 | 28.40 | 33.62 |
| 90301 | (S) HOME CARE DELIVERY TECH | S21 | 12.24 | 14.99 | 17.75 |
| 90302 | (S) HOME CARE DELIVERY TECH P/D | S21 | 12.24 | 14.99 | 17.75 |
| 60324 | (S) HOUSEKEEPING ATTENDANT, SENIOR | S20 | 11.94 | 14.62 | 17.32 |
| 60325 | (S) HOUSEKEEPING ATTENDANT, SENIOR P/D | S20 | 11.94 | 14.62 | 17.32 |
| 50000 | (S) HUMAN RESOURCES PER DIEM REP | PDF.4 | | | |
| 92022 | (S) INPATIENT ASSISTANT (12) | S19 | 11.65 | 14.27 | 16.89 |
| 92023 | (S) INPATIENT ASSISTANT (12) P/D | S19 | 11.65 | 14.27 | 16.89 |
| 92024 | (S) INPATIENT ASSISTANT (8) | S19 | 11.65 | 14.27 | 16.89 |
| 92025 | (S) INPATIENT ASSISTANT (8) P/D | S19 | 11.65 | 14.27 | 16.89 |
| 50044 | (S) JR BUYER | S31 | 15.66 | 19.19 | 22.71 |
| 10984 | (S) LEAD, HVAC&R TECHNICIAN | S48 | 23.82 | 29.17 | 34.54 |
| 10983 | (S) LEAD, MECHANIC | S48 | 23.82 | 29.17 | 34.54 |
| 40104 | (S) LEAD, PROGRAM SPECIALIST | S23 | 12.86 | 15.75 | 18.65 |
| 60105 | (S) MAINTENANCE COORDINATOR | S52 | 26.28 | 32.20 | 38.12 |
| 60152 | (S) MAINTENANCE MECHANIC II | S37 | 18.16 | 22.25 | 26.33 |
| 60107 | (S) MAINTENANCE MECHANIC III | S41 | 20.04 | 24.55 | 29.06 |
| 60100 | (S) MAINTENANCE TECH I | S27 | 14.19 | 17.38 | 20.57 |
| 50222 | (S) MATERIEL MANAGEMENT ASSOC. | S26 | 13.84 | 16.96 | 20.07 |
| 92020 | (S) MATERIEL SERVICES OPERATOR | S24 | 13.19 | 16.15 | 19.13 |
| 92021 | (S) MATERIEL SVCS OPERATOR P/D | S24 | 13.19 | 16.15 | 19.13 |
| 40013 | (S) MEDICAL ASSISTANT I | S18 | 11.37 | 13.92 | 16.48 |
| 40037 | (S) MEDICAL ASSISTANT I (P/D) | S18 | 11.37 | 13.92 | 16.48 |

## SCHEDULE A4
## 4% RANGE ADJUSTMENT
## JULY 2008

| Job Code | Title | Grade | July 2008 Range Min | Mid | Max |
|---|---|---|---|---|---|
| 40015 | (S) MEDICAL ASSISTANT II | S22 | 12.54 | 15.37 | 18.19 |
| 40030 | (S) MEDICAL ASSISTANT II P/D | S22 | 12.54 | 15.37 | 18.19 |
| 40106 | (S) NURSING ACTIVITIES ASSISTANT | S23 | 12.86 | 15.75 | 18.65 |
| 60106 | (S) PAINTER | S33 | 16.45 | 20.16 | 23.85 |
| 60111 | (S) PAINTER, LEAD | S35 | 17.28 | 21.16 | 25.06 |
| 10381 | (S) PARENT LIAISON | S33 | 16.45 | 20.16 | 23.85 |
| 10386 | (S) PARENT LIASON (12) | S33 | 16.45 | 20.16 | 23.85 |
| 10383 | (S) PARENT LIASON P/D | S33 | 16.45 | 20.16 | 23.85 |
| 42012 | (S) PATIENT CARE ASSISTANT (12) | S16 | 10.82 | 13.25 | 15.68 |
| 42013 | (S) PATIENT CARE ASSISTANT (12) P/D | S16 | 10.82 | 13.25 | 15.68 |
| 42010 | (S) PATIENT CARE ASSISTANT (8) | S16 | 10.82 | 13.25 | 15.68 |
| 42011 | (S) PATIENT CARE ASSISTANT (8) P/D | S16 | 10.82 | 13.25 | 15.68 |
| 50621 | (S) PATIENT REP | S22 | 12.54 | 15.37 | 18.19 |
| 50619 | (S) PATIENT REP P/D | S22 | 12.54 | 15.37 | 18.19 |
| 10585 | (S) PC CUSTOMER SERVICE TECH | S42 | 20.54 | 25.16 | 29.79 |
| 10584 | (S) PC CUSTOMER SERVICE TECH P/D | S42 | 20.54 | 25.16 | 29.79 |
| 10586 | (S) PC CUSTOMER SERVICE TECH, SR | S47 | 23.23 | 28.45 | 33.70 |
| 40103 | (S) PROGRAM ACTIVITY ASST | S23 | 12.86 | 15.75 | 18.65 |
| 10171 | (S) QMRP ASSISTANT | S25 | 13.51 | 16.55 | 19.58 |
| 10170.1 | (S) QMRP ASSISTANT P/D | S25 | 13.51 | 16.55 | 19.58 |
| 60204 | (S) RECEIVING ASSISTANT | S15 | 10.40 | 12.50 | 14.60 |
| 40112 | (S) RECREATION THERAPY ASST | S23 | 12.86 | 15.75 | 18.65 |
| 51021 | (S) RELEASE OF INFORMATION SPEC | S22 | 12.54 | 15.37 | 18.19 |
| 40110 | (S) RESIDENTIAL CARE PROFESSIONAL | S16 | 10.82 | 13.25 | 15.68 |
| 40029 | (S) RESIDENTIAL CARE PROFESSIONAL P/D | S16 | 10.82 | 13.25 | 15.68 |
| 90305 | (S) SHUTTLE BUS DRIVER | S21 | 12.24 | 14.99 | 17.75 |
| 90304 | (S) SHUTTLE BUS DRIVER P/D | S21 | 12.24 | 14.99 | 17.75 |
| 10971 | (S) SR BUYER | S43 | 21.05 | 25.78 | 30.52 |
| 10310 | (S) STERILE PROCESSING TECH I | S26 | 13.84 | 16.96 | 20.07 |
| 10325 | (S) STERILE PROCESSING TECH I P/D | S26 | 13.84 | 16.96 | 20.07 |
| 10312 | (S) STERILE PROCESSING TECH II | S30 | 15.29 | 18.72 | 22.16 |
| 50303 | (S) SURGERY SCHEDULER (10) | S33 | 16.45 | 20.16 | 23.85 |
| 50304 | (S) SURGERY SCHEDULER (12) | S33 | 16.45 | 20.16 | 23.85 |
| 50302 | (S) SURGERY SCHEDULER (8) | S33 | 16.45 | 20.16 | 23.85 |
| 40035 | (S) SURGICAL SERVICES AIDE (12) | S15 | 10.40 | 12.50 | 14.60 |
| 40034 | (S) SURGICAL SERVICES AIDE (8) | S15 | 10.40 | 12.50 | 14.60 |
| 40036 | (S) SURGICAL SERVICES AIDE (8) P/D | S15 | 10.40 | 12.50 | 14.60 |
| 50409 | (S) TRANSCRIPTIONIST | S31 | 15.66 | 19.19 | 22.71 |
| 50430 | (S) TRANSCRIPTIONIST P/D | S31 | 15.66 | 19.19 | 22.71 |
| 90004 | (S) TRANSLATOR/RESOURCE SPEC P/D | S33 | 16.45 | 20.16 | 23.85 |
| 90005 | (S) TRANSLATOR/RESOURCE SPECIALIST | S33 | 16.45 | 20.16 | 23.85 |
| 90019 | (S) TRANSLATOR/RESOURCE SPECIALIST (ALT) | S33 | 16.45 | 20.16 | 23.85 |
| 40022 | (S) TRANSPORT AIDE | S19 | 11.65 | 14.27 | 16.89 |
| 40022.1 | (S) TRANSPORT AIDE P/D | S19 | 11.65 | 14.27 | 16.89 |
| 92018 | (S) WAREHOUSE COORDINATOR | S26 | 13.84 | 16.96 | 20.07 |

EXHIBIT A
57

Children's Hospital and Health Center San Diego

## SCHEDULE B
## Costs for Medical, Dental and Vision Plans
Effective July 1, 2006

### Medical Plans Bi-weekly Costs

| | TOTAL COST | Full Time => 72 hrs Children's Cost | Full Time => 72 hrs Employee Cost | Part Time = 71.9 – 64 hrs Children's Cost | Part Time = 71.9 – 64 hrs Employee Cost | Part Time = 63.9 – 56 hrs Children's Cost | Part Time = 63.9 – 56 hrs Employee Cost | Part Time = 55.9 – 48 hrs Children's Cost | Part Time = 55.9 – 48 hrs Employee Cost | Part Time = 47.9 – 36 hrs* Children's Cost | Part Time = 47.9 – 36 hrs* Employee Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Health Net POS** | | | | | | | | | | | |
| • Emp Only | 186.99 | 147.17 | 39.82 | 126.78 | 60.21 | 106.40 | 80.59 | 86.02 | 100.97 | 65.64 | 121.35 |
| • Emp & Children | 358.77 | 265.49 | 93.28 | 237.51 | 121.26 | 209.88 | 148.89 | 181.90 | 176.87 | 154.27 | 204.50 |
| • Emp & Sp/DP | 400.38 | 297.49 | 102.89 | 268.66 | 131.72 | 239.83 | 160.55 | 211.00 | 189.38 | 182.17 | 218.21 |
| • Emp & Family | 565.41 | 394.10 | 171.31 | 355.66 | 209.76 | 317.20 | 248.21 | 278.75 | 286.66 | 240.30 | 325.11 |
| **Health Net HMO** | | | | | | | | | | | |
| • Emp Only | 167.42 | 135.61 | 31.81 | 115.86 | 51.56 | 95.93 | 71.49 | 76.01 | 91.41 | 56.26 | 111.16 |
| • Emp & Children | 318.47 | 237.58 | 80.89 | 210.51 | 107.96 | 183.44 | 135.03 | 156.05 | 162.42 | 128.98 | 189.49 |
| • Emp & Sp/DP | 356.33 | 266.54 | 89.79 | 238.39 | 117.94 | 210.23 | 146.10 | 182.08 | 174.25 | 153.94 | 202.39 |
| • Emp & Family | 502.05 | 348.43 | 153.62 | 310.77 | 191.28 | 273.63 | 228.42 | 235.96 | 266.09 | 198.31 | 303.74 |
| **Sharp Health Plan HMO** | | | | | | | | | | | |
| • Emp Only | 116.19 | 97.83 | 18.36 | 82.73 | 33.46 | 67.62 | 48.57 | 52.52 | 63.67 | 37.41 | 78.78 |
| • Emp & Children | 214.77 | 166.45 | 48.32 | 145.83 | 68.94 | 125.21 | 89.56 | 104.59 | 110.18 | 83.97 | 130.80 |
| • Emp & Sp/DP | 259.30 | 193.96 | 65.34 | 172.69 | 86.61 | 151.17 | 108.13 | 129.59 | 129.39 | 108.65 | 150.65 |
| • Emp & Family | 342.71 | 242.64 | 100.07 | 213.85 | 128.86 | 185.41 | 157.30 | 156.96 | 185.75 | 128.52 | 214.19 |
| **Bi-weekly Flex Credit (if employee waives medical coverage)** | | | | | | | | | | | |
| Cash Back in Bi-weekly Paycheck | | | 17.93 | | 15.92 | | 13.93 | | 11.91 | | 9.95 |

### Dental Plans Bi-weekly Costs

| | TOTAL COST | Full Time => 72 hrs Children's Cost | Full Time => 72 hrs Employee Cost | Part Time = 71.9 – 64 hrs Children's Cost | Part Time = 71.9 – 64 hrs Employee Cost | Part Time = 63.9 – 56 hrs Children's Cost | Part Time = 63.9 – 56 hrs Employee Cost | Part Time = 55.9 – 48 hrs Children's Cost | Part Time = 55.9 – 48 hrs Employee Cost | Part Time = 47.9 – 36 hrs* Children's Cost | Part Time = 47.9 – 36 hrs* Employee Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **SafeGuard Dental HMO** | | | | | | | | | | | |
| • Emp Only | 4.35 | 3.44 | 0.91 | 3.01 | 1.34 | 2.58 | 1.77 | 2.15 | 2.20 | 1.72 | 2.63 |
| • Emp & Children | 7.79 | 3.36 | 4.43 | 2.88 | 4.91 | 2.03 | 5.76 | 1.36 | 6.43 | 0.70 | 7.09 |
| • Emp & Sp/DP | 8.82 | 5.08 | 3.74 | 4.46 | 4.36 | 3.84 | 4.98 | 3.21 | 5.61 | 2.59 | 6.23 |
| • Emp & Family | 12.61 | 6.61 | 6.00 | 5.63 | 6.98 | 4.65 | 7.96 | 3.67 | 8.94 | 2.70 | 9.91 |
| **Children's Basic PPO** | | | | | | | | | | | |
| • Emp Only | 7.70 | 7.70 | 0.00 | 6.84 | 0.86 | 6.00 | 1.70 | 5.14 | 2.56 | 4.28 | 3.42 |
| • Emp & Children | 20.49 | 12.02 | 8.47 | 10.68 | 9.81 | 9.35 | 11.14 | 8.00 | 12.49 | 6.68 | 13.81 |
| • Emp & Sp/DP | 18.44 | 11.26 | 7.18 | 10.00 | 8.44 | 8.76 | 9.68 | 7.50 | 10.94 | 6.25 | 12.19 |
| • Emp & Family | 32.29 | 17.64 | 14.65 | 15.69 | 16.60 | 13.73 | 18.56 | 11.76 | 20.53 | 9.80 | 22.49 |
| **Children's Maximum PPO** | | | | | | | | | | | |
| • Emp Only | 10.43 | 7.70 | 2.73 | 6.85 | 3.58 | 6.00 | 4.43 | 5.14 | 5.29 | 4.28 | 6.15 |
| • Emp & Children | 25.67 | 12.02 | 13.65 | 10.69 | 14.98 | 9.36 | 16.31 | 8.02 | 17.65 | 6.69 | 18.98 |
| • Emp & Sp/DP | 23.08 | 11.25 | 11.83 | 10.01 | 13.07 | 8.77 | 14.31 | 7.50 | 15.58 | 6.26 | 16.82 |
| • Emp & Family | 40.04 | 17.66 | 22.38 | 15.70 | 24.34 | 13.72 | 26.32 | 11.76 | 28.28 | 9.80 | 30.24 |

### Vision Plan Bi-weekly Costs

| | TOTAL COST | Full Time => 72 hrs Children's Cost | Full Time => 72 hrs Employee Cost | Part Time = 71.9 – 64 hrs Children's Cost | Part Time = 71.9 – 64 hrs Employee Cost | Part Time = 63.9 – 56 hrs Children's Cost | Part Time = 63.9 – 56 hrs Employee Cost | Part Time = 55.9 – 48 hrs Children's Cost | Part Time = 55.9 – 48 hrs Employee Cost | Part Time = 47.9 – 36 hrs* Children's Cost | Part Time = 47.9 – 36 hrs* Employee Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **EyeMed Vision Care** | | | | | | | | | | | |
| • Emp Only | 2.74 | 1.92 | 0.82 | 1.75 | 0.99 | 1.58 | 1.16 | 1.41 | 1.33 | 1.24 | 1.50 |
| • Emp & Children | 5.34 | 4.21 | 1.13 | 3.89 | 1.45 | 3.58 | 1.76 | 3.26 | 2.08 | 2.95 | 2.39 |
| • Emp & Sp/DP | 5.67 | 4.47 | 1.20 | 4.14 | 1.53 | 3.79 | 1.88 | 3.47 | 2.20 | 3.13 | 2.54 |
| • Emp & Family | 8.35 | 6.54 | 1.81 | 5.95 | 2.40 | 5.35 | 3.00 | 4.75 | 3.60 | 4.15 | 4.20 |

* If you work less than 36 hours in a pay period you are responsible to pay the bi-weekly total cost for your medical, dental and/or vision coverage. Also, if you waive medical coverage and you work less than 36 hours in a pay period, you will not receive a flex credit on your paycheck for that pay period.

**EXHIBIT A**

58

EXHIBIT B



# LOCAL 2028

**SEIU**
Stronger Together

## Service Employees International Union, CLC

**TO: LORA MITCHELL    SENT BY EMAIL** lmitchell@rchsd.org **and FAX  (858) 966-4034**
**FROM: MIKE WILZOCH, ASSISTANT TRUSTEE OF LOCAL 2028**
**       CC: BRUCE HARLAND, LOIS BALFOUR, ASSISTANT TRUSTEES OF LOCAL 2028**
**RE: GRIEVANCE ON FAILURE TO HONOR RIGHTS OR RECOGNITION OF LOCAL 2028**
**DATE: 11/16/07**

♦ **CLASS ACTION GRIEVANCE—ALL AFFECTED EMPLOYEES**

♦ **DATE OF INCIDENT—10/18/07—ONGOING**

♦ **NATURE OF GRIEVANCE: WHILE EMPLOYER HAS STATED AND PUT INTO WRITING THAT IT IS AND WILL HONOR THE CONTRACT BETWEEN THE EMPLOYER AND SEIU LOCAL 2028, AND HAS PROCESSED SOME GRIEVANCES FILED BY SEIU LOCAL 2028 STEWARDS, THE EMPLOYER SIMULTANEOUSLY CLAIMS IN A CIVIL LAWSUIT AND A LETTER FROM IT'S ATTORNEY RECIEVED 10/18 THAT SEIU LOCAL 2028 DOES NOT EXIST AND IT WILL NOT HONOR ITS CONTRACTUAL OBLIGATIONS, TO THE DETRIMENT OF ITS EMPLOYEES.**

**THE EMPLOYER HAS THEREFORE IN PRACTICE ILLOGICALLY AND ILLEGALLY FAILED AND REFUSED TO HONOR THE RECOGNITION OF THE UNION WITH WHOM IT HAS A BONA FIDE COLLECTIVE BARGAINING AGREEMENT, DENIED ACCESS TO ITS FACILITIES OF UNION REPRESENTATIVES, AND DENIED ITS EMPLOYEES THEIR FULL REPRESENTATION RIGHTS.  IN ADDITION, THE EMPLOYER HAS THREATENED STEWARDS AND EMPLOYEES SEEKING TO EXCERCISE THEIR CONTRACTUAL RIGHTS AND/OR PROTECTED/CONCERTED ACTIVITY.**

♦ **ARTICLES VIOLATED: INCLUDING BUT NOT LIMITED TO VIOLATION OF PREAMBLE—RESPECT AND DIGNITY; ARTICLE I—RECOGNITION; ARTICLE IV— UNION REPRESENTATION; ARTICLE VI, GRIEVANCE AND ARBITRATION PROCEDURE; ARTICLE XVIII—NON-DISCRIMINATION; ARTICLE XXXI— MANAGEMENT RIGHTS; THE NLRA; AND ANY OTHER ARTICLE OR SECTION WHICH MAY APPLY.**

San Diego ~ Riverside ~ Imperial Counties

◆ **REMEDY SOUGHT**

- **EMPLOYER TO COMPLY IMMEDIATELY WITH THE PROVISIONS OF THE AFOREMENTIONED SECTIONS, INCLUDING BUT NOT LIMITED TO:**

  ➢ **A PUBLIC APOLOGY IN WRITING BY THE CEO TO ALL MEMBERS OF THE BARGAINING UNIT REGARDING THE EMPLOYER'S FAILURE TO RESPECT THEIR LEGAL AND CONTRACTUAL RIGHTS; FOR THREATS MADE TO EMPLOYEES FOR UNION AND/OR CONCERTED ACTIVITY; A PLEDGE TO HONOR THE CONTRACT AND RESPECT THE RIGHTS OF EMPLOYEES AND THEIR REPRESENTATIVES TO UTILIZE THEIR CONTRACT; AND AGREE TO AN IMMEDIATGE LABOR/MANAGEMENT MEETING FOR THE PURPOSE OF PROMOTING PROFESSIONAL & PRODUCTIVE LABOR/MANAGEMENT RELATIONS.**

  ➢ **PUBLICLY AND PRACTICALLY RECOGNIZE SEIU LOCAL 2028 AND ALL RIGHTS ATTENDANT TO SUCH RECOGNITION.**

  ➢ **THAT THE INFORMATION REQUEST SUBMITTED TO THE EMPLOYER ON OCTOBER 9TH BE RESPONDED TO IN FULL WITHIN 5 BUSINESS DAYS OF THE RESOLUTION OF THIS GRIEVANCE.**

  ➢ **BADGES TO BE PROVIDED AND ACCESS TO THE EMPLOYER'S FACILITIES BE MADE AVAILABLE IMMEDIATELY TO UNION REPRESENTATIVES AS PER THE AGREEMENT.**

  ➢ **THE EMPLOYER TO RESPECT THE GRIEVANCE PROCEDURE BY RECOGNIZING THAT THE STATUS AND THE TIME OF THE STEWARD (AND HIS/HER DEPT) AND THE UNION REP IS AS IMPORTANT AS THEIR OWN, AND TO APPLY THIS PRINCIPLE IN THE SCHEDULING AND HEARING OF GRIEVANCES AND INVESTIGATORY MEETINGS.**

  ➢ **TO CEASE AND DESIST FROM THREATS TO STEWARDS AND EMPLOYEES FOR EXCERCISING THEIR LEGAL AND CONTRACTUAL RIGHTS; AN APOLOGY TO ALL AFFECTED EMPLOYEES BY THE MANAGER AND HIS/HER SUPERVISOR INVOLVED FROM A LIST TO BE DELIVERED BY THE UNION; AGREEMENT TO FMCS SPONSORED TRAINING ON HOW TO CONDUCT PROFESSIONAL AND PRODUCTIVE L/M RELATIONS.**

  ➢ **ACKNOWLEDGEMENT IN WRITING BY THE EMPLOYER THAT IT HAS EXCEEDED ITS AUTHORITY UNDER THE MANAGMENT RIGHTS CLAUSE, AND A PLEDGE TO HONOR BOTH THE SPIRIT, INTENT, AND PLAIN LANGUAGE OF THE ARTICLE IN THE FUTURE.**

  ➢ **THAT A COMMITTEE OF UNION MEMBERS CONDUCT HEARINGS ON WORK TIME TO ASCERTAIN THE HARM DONE TO MEMBERS OF THE BARGAINING UNIT BY THE EMPLOYER'S LONG STANDING FAILURE TO HONOR ITS OBLIGATIONS, AND THAT NO REASONABLE REMEDY PROPOSED BY THE COMMITTEE TO THE EMPLOYER BE DENIED.**

EXHIBIT B

# LOCAL 2028

**SEIU**
Stronger Together

Service Employees International Union, CLC

➢ **ANY OTHER REMEDY THAT IS JUST AND PROPER**

**EXHIBIT C**

# SEIU
**Stronger Together**

# LOCAL 2028

## Service Employees International Union, CLC

TO: LORA MITCHELL     SENT BY EMAIL lmitchell@rchsd.org and FAX  (858) 966-4034

FROM: MIKE WILZOCH, ASSISTANT TRUSTEE OF LOCAL 2028
   CC: BRUCE HARLAND, LOIS BALFOUR, ASSISTANT TRUSTEES OF LOCAL 2028

RE: NOTICE OF ARBITRATION APPEAL OF UNION GRIEVANCE ON FAILURE TO
   HONOR RIGHTS OR RECOGNITION OF LOCAL 2028

DATE: 1/8/08

HAVING HEARD NO RESPONSE FROM THE EMPLOYER TO THE STEP B APPEAL FILED
12/4/07, THIS WILL SERVE TO NOTIFY THE HUMAN RESOURCES DEPT., AS PER
ARTICLE VI, SECTION 6.05 OF THE CBA, OF THE UNION'S INTENT TO PROCEED TO
ARBITRATION ON THE AFOREMENTIONED GRIEVANCE, ORIGINALLY FILED ON
11/16/07.

AS PER SECTION 6.05, THE PARTIES ARE TO SELECT A MUTUALLY AGREEABLE
ARBITRATOR WITHIN 10 WORKING DAYS.

IF I HAVE NOT HEARD FROM YOU BY JANUARY 21st, WE SHALL PROCEED WITH A
REQUEST TO THE APPROPRIATE AUTHORITY TO RECEIVE A LIST OF ARBITRATORS,
AGAIN IN ACCORDANCE WITH THE CBA.

RECEIVED

FEB 1 3 2008

**WR&R**

## MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383

GARY F. OVERSTREET
g.overstreet@mpglaw.com
(213) 629-7794

TELEPHONE: (213) 629-7600
FACSIMILE: (213) 624-1376
WWW.MPGLAW.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

February 11, 2008

W. Daniel Boone
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway
Suite 200
Alameda, California 94501-1091

Re: Service Employees International Union, Local 2028/Rady Children's Hospital -
San Diego (Class Action Grievance)

Dear Mr. Boone:

Your letter to Lora Mitchell of Rady Children's Hospital – San Diego has been
referred to this office for reply. We assume that your letter refers to the grievance submitted on
November 16, 2007, alleging *inter alia* that the Employer has failed and refused to honor the
recognition of the Union . . . ." The grievance, on its face, acknowledges that this matter is the
subject of a currently pending action in federal court concerning whether SEIU Local 2028 still
exists and whether representation rights unlawfully have been transferred to another union.
These issues also are being considered by the National Labor Relations Board. Accordingly,
your request for arbitration is denied.

Very truly yours,

Gary F. Overstreet
for MUSICK, PEELER & GARRETT LLP

GFO:aef

Cc: Lora Mitchell

EXHIBIT D

63

**EXHIBIT E**

# MUSICK, PEELER & GARRETT LLP
## ATTORNEYS AT LAW

GARY F. OVERSTREET
g.overstreet@mpglaw.com
(213) 629-7794

ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383

TELEPHONE: (213) 629-7600
FACSIMILE: (213) 624-1376
WWW.MPGLAW.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO. 12899.023

March 10, 2008

**VIA FACSIMILE & U.S. MAIL**
Bruce A. Harland
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway
Suite 200
Alameda, California 94501-1091

Re: Service Employees International Union, Local 2028/Rady
Children's Hospital – San Diego Class Action

Dear Mr. Harland:

In response to your letter to me dated last Friday, March 7, 2008, the Hospital continues to assert that 2028 no longer exists and therefore continues to oppose your request for arbitration.

Very truly yours,

Gary F. Overstreet
for MUSICK, PEELER & GARRETT LLP

GFO:aef
577100.1

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148815    — KD**

**March 17, 2008
11:17:28**

**Civ Fil Non—Pris**
USAO #.: 08CV0486
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC 29066

**Total—> $350.00**

FROM: CIVIL FILING
      SEIU V. RADY CHILDRENS HOSP
      08CV0486-L

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

MAR 14 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## I. (a) PLAINTIFFS

SEIU, Local 2028

**DEFENDANTS**

RADY CHILDREN'S HOSPITAL – SAN DIEGO; DOES 1 THROUGH 10

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Bruce A. Harland, Weinberg, Roger & Rosenfeld, 1001 Marina Village Parkway, Suite 200, Alameda, CA 94501, (510) 337-1001

Attorneys (If Known)

**'08 CV 486 L POR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C § 152; 29 U.S.C § 185, 9 U.S.C § 1

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 03/12/2008

SIGNATURE OF ATTORNEY OF RECORD *Bruce A. Harland*

**FOR OFFICE USE ONLY**

RECEIPT # 148815  AMOUNT $350  APPLYING IFP no 3/12/08  JUDGE _____  MAG. JUDGE _____

